## WILLIAMS et al. v. ALLIED METAL PRODUCTS CORPORATION.

### No. 7810.

Circuit Court of Appeals, Sixth Circuit.
Nov. 10, 1939.

Arthur W. Dickey, of Detroit, Mich. (Harness, Dickey, Pierce & Hann, of Detroit, Mich., on the brief), for appellants.

Stuart C. Barnes, of Detroit, Mich. (Barnes, Kisselle, Laughlin & Raisch, Stuart C. Barnes, and A. F. Baillio, all of Detroit, Mich., on the brief), for appellee.

Before HICKS, HAMILTON, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

This is a suit for infringement of U. S. Letters Patent No. 1,771,386, dated July 22, 1930, covering molding for automobile bodies, Appellant, Leo L. Williams, is owner of the patent, and appellant, Herron-Zimmers Moulding Company is exclusive licensee. Appellee, Allied Metal Products Corporation, maker and vendor of moldings alleged to infringe, has denied infringement and challenged the validity of appellants' patent. The District Court, holding that there was no infringement, considered it unnecessary to pass upon patent's validity.

Roof and drip moldings for automobiles were old and well known in the art when appellants' patent was filed. Appellants do not claim this patent to be the first cover-

ing a "fold-down" type of molding. Nor is such a claim made as to a prior patent, No. 1,714,478, granted to appellant Williams in 1929, showing and claiming a "fold-down" metal roof and drip molding. In the roof molding, malleable metal flanges or wings fold down to abut edge to edge; in the drip molding, the wing folds down to abut against a shoulder; in each, the edges are hammered together so as to swage or "cold-weld" the metal at the joint to form an even, homogeneous surface in which the seam is obliterated.

The patent in suit is similar to the first Williams patent, except that grooves are provided at the bases of the wings in such manner as to leave, at the center of the strip, an upstanding thickened portion or rib through which nails are driven. At their free ends, the wings are bent outwardly with a slight reverse curve that is not present in the first patent. After the molding is attached, the wings are folded over onto the raised portion or rib at the center and swedged together as on an "anvil." The relief of the metal at the base makes folding of the wing easier, and appellants allege that it prevents the occurrence of ridges or distortions of the contour at the base of the wing, which are said to occur in folding the wing of the molding of the first Williams patent.

When the application for this patent was first filed, claims were presented specifying merely the relief groove. The Examiner ruled that merely cutting away a portion of the stock to facilitate bending was not patentable. The patent was later allowed, however, after the claims were so changed as to specify an arrangement of abutting edges or edge and shoulder, such as was claimed in Williams' prior patent, together with a relief groove "whereby the groove may receive the extra fullness of metal when the shoulder portions come into solid abutting relation."

The evidence shows that in the fall of 1929, the Fisher Body Corporation began a very extensive use of appellee's molding and that a large number of cars with its molding appeared on the streets. Before the six months' period in which to pay the final fee expired, appellant filed a renewal application. On February 1, 1930, the amendment of the application, specifying the relief groove as space to receive the flow of the metal occasioned by wing-bending, was superseded by the following statement:

"The primary purpose and most important function thereof is not to facilitate the bending about the base of the lip as a hinge point, but to distribute and *limit the bending between the free edge of the lip and a point or line a short distance from the base of the lip* so that when the molding is closed it will have the desired or predetermined exterior shape and curvature in conformity with the exterior curvature which the open or originally extruded molding has at and adjacent the base of the lip, the curved shape at this point being unchanged in the closing operation." (Italics added.)

The three claims allowed under appellants' patent do not differ materially. Claim one is as follows:

"A molding of malleable metal in the form of an open channel having a base through which attaching devices are adapted to be inserted from the channel opening intermediately of the edges of the molding and a wing integral with the base and foldable down onto the base over the attaching devices, one of said parts of the molding having a relatively thick portion projecting interiorly of the channel intermediately of the edges thereof and engaging with the other part in the closing operation to serve as a stop to limit the inward swinging movement of the wing in the closing operation and to insure a predetermined external contour to the closed molding."

In summary, Williams' first patent claims a means of securing a concealed seam and an even surface by the use of a "fold-down" type of malleable metal flanges which are "cold-welded" at the seam; under the first application for the patent in suit, the alleged contribution is a device for the procurement of a smooth, unbroken and well-rounded surface by the utilization of a relief groove to eliminate distortion of the surface at the base of the wing; and the alleged contribution under the renewal application is a means of securing a predetermined contour in the surface by utilizing an elevated portion in the base to limit bending in the closing operation to a portion of the flange adjacent to the free edge.

The mere thinning of metal at the juncture of the flange and the base is a simple mechanical expedient to facilitate bending, and this has been held not to be subject to patent. Mosler Safe & Lock Co. v. Mosler Bahmann & Co., 127 U.S. 354, 8 S.Ct. 1148, 32 L.Ed. 182. The relief grooves, claimed under the original appli-

cation for the patent in suit as a means of preventing distortion in the surface, constitute nothing more than a thinning or reduction in the metal where the folding operation occurs. Any impact of metal sufficient to produce a distortion in the surface of the flange naturally impedes the folding process. Consequently, the claim that a relief groove prevents distortion in the surface due to the impact of metal at the juncture of the flange and base is merely a different method of stating that the folding process is facilitated by a reduction in the metal.

In the renewal application, the utilization of an elevated portion in the center of the base is emphasized. But to assert that the center portion of the base is elevated or thickened is merely to say that its extremities are lowered or thinned. It follows that the renewal application discloses no greater novelty in the means by which the desired result is alleged to be accomplished than was indicated in the original application or known in the prior art.

Furthermore, we entertain grave doubt as to whether the result claimed can be accomplished by a mere elevation in the center of the base. When it is considered that the ultimate external contour of the flange is necessarily determined in large measure before it comes into contact with the base, the pretentious nature of the claim urged is apparent.

Whether bending is limited, as claimed, to the portion of the flange adjacent to its free edge obviously depends almost entirely upon the way in which the flange itself is constructed and the manner in which force is applied thereto in bending. The elevated portion in the base is without effect until the flange comes into contact with it. Since the folding operation is then virtually completed, it follows that the influence of this elevated portion in achieving a predetermined contour is minor and incidental.

Assuming, however, that an invention was disclosed in appellant's renewal application, we are nevertheless of the opinion that appellee's structure constitutes no infringement thereof.

The District Court found that, while appellee's moldings have a thickened center portion, it is not utilized to limit bending to the free edge portion of the flange, the function claimed for it in appellant's renewal application. We are of the opinion that this finding was amply justified, as was also the finding that the bending in appellee's structure is confined almost entirely to the fold line.

In addition, appellee's structure is unlike that of appellant in that the folding operation is completed as soon as the flange comes into contact with the base. There is thereafter no swedging operation, an essential step in the method by which appellant claims to attain the predetermined contour.

Appellee's structure merely utilizes a relief groove to facilitate folding, which has been held not to constitute invention. It follows that appellee's structure cannot infringe.

The decree of the District Court is affirmed.