## CHENEY CO. v. CUNNINGHAM et al.
### Civil Action No. 215.

District Court, W. D. Pennsylvania.
Jan. 14, 1941.

See, also, D.C., 29 F.Supp. 847.

Richard E. Marine, of Pittsburgh, Pa., and Emery, Booth, Holcombe & Miller, of Washington, D. C., for plaintiff.

Christy, Parmalee & Wharton, of Pittsburgh, Pa., for defendants.

SCHOONMAKER, District Judge.

This is a patent suit against Cunningham and Friedberg, then partners doing business as Roof Specialties Company. Since the suit started, a corporation by the same name has succeeded to the business of the partnership, and has been joined as a defendant. The suit involves a charge of infringement by defendants of four patents owned by plaintiff, i. e., Nos. 1,715,000;

226

1,728,955; 1,939,619; and 1,871,585, relating to metal roof flashings.

Defendants have filed a counterclaim, charging plaintiff with unfair competition in trade through the misuse of patent threats and other trade practices intended to discourage customers from the purchase of defendants' roof flashings.

The patents in suit all relate to interlocking through-wall flashings for use in masonry buildings, designed to provide a metallic flashing extending through the masonry wall, to intercept and cut off the downward flow or seepage of water infiltration in the wall, and at the same time to provide a mechanically-keyed bond between the flashing and the masonry above and below it so as to prevent the movement of the masonry in any direction.

It is old in the art to use metal flashings which do not employ any means to key the masonry to the flashings; and such flashings are still in use. Architects and builders are not in uniform agreement as to the necessity or desirability of this keying.

The prior art also discloses through-wall sheet metal flashings with corrugations to prevent shifting of overlying masonry. See White Patent No. 423,888, granted March 18, 1890. Likewise, it was known in the prior art to interlock these flashings to mortar by Z-shaped pieces haphazardly soldered on the top and bottom of the sheet (Test. McSteen, Rec. pg. 95). Brown Patent No. 689,281, granted December 17, 1901, shows sheet metal with dovetail-shaped corrugations to interlock with the masonry. A similar structure is shown in the Schlafly Patent No. 840,016, granted January 1, 1907. Structures having dovetail ridges and grooves to interlock with masonry were described for commercial use in Sweet's Architectural Catalog, 1916 (Defts Ex. 8, prior art).

With this brief statement, we proceed now to consider each of plaintiff's patents.

### Patent No. 1,715,000.

The patent was granted May 28, 1929. Plaintiff relies on claims 1 and 2, which read as follows:

"1. A flashing comprising a continuous strip of sheet material, embodying therein a plurality of dove-tail shaped grooves and ridges, the opposite sides of a groove on one face of the material tapering longitudinally of the groove in the opposite direction to that in which the opposite sides of another groove on the same face of the material tapers.

"2. A building construction comprising superposed courses of masonry, a layer of binding material for said courses, and a section of sheet metal flashing embedded within said binding material, said section embodying therein a plurality of grooves and ridges each having sides inclined to the face of the material and also tapering longitudinally thereof in opposite directions on both sides thereof respectively whereby the masonry is bonded together in all directions."

In the file-wrapper history of this patent, it appears that Cheney made fourteen claims, all of which were rejected on prior-cited patents. After amendments to claims 7 and 9, they were allowed as claims 1 and 2 above quoted. In this situation, Cheney must be held to have narrowed his form of construction to that described in his amended claims. That was the conclusion of the Circuit Court of Appeals of the First Circuit in E. Van Noorden Co. v. Cheney Co., 75 F.2d 298, in construing the very patent here in suit. That court said, 75 F.2d page 302: "Cheney has chosen the form in which his patented flashing must be constructed by his amendment to claim 9, and has abandoned all broader claims." That view is amply supported by Supreme Court decisions, among which we may note: I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 443, 47 S.Ct. 136; 71 L.Ed. 335; Shepard v. Carrigan, 116 U.S. 593, 597, 598, 6 S.Ct. 493, 29 L.Ed. 723; Hubbell v. United States, 179 U.S. 77, 83, 85, 21 S.Ct. 24, 45 L.Ed. 95; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U.S. 425, 429, 14 S.Ct. 627, 38 L.Ed. 500; Weber Electric Co. v. E. H. Freeman Electric Co., 256 U.S. 668, 677, 41 S.Ct. 600, 65 L.Ed. 1162.

Comparing now the accused structures with the claims of this patent in suit, we find that both are flashings comprising a continuous strip of sheet metal, but there the similarity ceases. The accused structures do not have the plurality of dovetail-shaped grooves and ridges of the patent claim. A "dovetail", as we understand it, is a structure in form of a tenon having oppositely-flared edges similar in shape to the tail of a bird. The accused structure does not have that dovetail arrangement. It comprises a series

or succession of teeth. The slope of each tooth begins at the base of the adjacent tooth. There is no separation between the teeth. They all slope in the same direction. There is no area such as the groove of the plaintiff's patent with an overhanging lip at each boundary. In our view, the dovetail and saw-tooth are not functional equivalents. The dovetail formation presents teeth pointing in opposite directions, so that the course of masonry is held from shifting in either longitudinal direction entirely by these alternately pointed teeth or ribs. In the saw-tooth formation, the teeth all point in one direction, and would therefore only lock against movement of the masonry to the left. There are means in defendants' structures for the preventing of the movement of masonry in both directions; and they are the beads or ridges in defendants' structures located in the metal between the saw-teeth.

The dovetail formation, however, is not new with Cheney. Such formation is shown in the Brown Patent No. 689,281; and the Cheney claim is limited to a dovetail formation of particular type, i. e., dovetail ridges and grooves tapering horizontally in opposite directions. We do not find this formation, or its equivalent, in defendants' accused structure. In defendants' structure, all teeth intermediate the two end teeth, and are inclined in the same direction and to the same degree. There is not present the splaying or reverse widening of alternate panels, as shown by Cheney. In defendants' structure, also, we find small beads diagonally across the sheet; and we find no counterpart of it in the Cheney claim.

We therefore conclude that defendants have not infringed claim 1 of the Cheney patent. Claim 2 of this Cheney patent is not for the flashing itself, but is for a building construction itself, comprising superposed courses of masonry having embodied in it sheet-metal flashings of the characteristics disclosed in claim 1 of the patent. This claim is undoubtedly for an exhausted combination of masonry and a metal flashing, which the plaintiff may not reclaim by inserting only a new kind of flashing. See Lincoln Engineering Co. v. Stewart-Warner Corporation, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251. It is therefore invalid. In any

event, it is not infringed by defendants, because they do not have the type of flashing there specified.

### Patent No. 1,728,955.

Claims 1 and 2 of this patent are in suit. They are as follows:

"1. A flashing consisting of a continuous strip of sheet metal bent to form dovetail shaped corrugations and a flange projecting laterally from the face of said strip at a side thereof, said corrugations being flattened against the face of said strip and extending transversely across said flange and reinforcing the latter.

"2. A flashing consisting of a continuous strip of sheet metal bent to form dovetail shaped grooves and ridges and a flange projecting laterally from a face of said strip at a side thereof, said ridges being flattened against the face of said strip and forming plaits extending transversely across said flange whereby the latter is enforced."

These claims are directed to the structure shown in Patent No. 1,715,000 hereinbefore discussed, with the added feature that the ribs and grooves on one edge of the sheet are pressed down, so that when a projecting edge of the flashing is pressed down against the wall, it will lie closely to the wall. We can see no invention in this added feature. It is but the exercise of mechanical expedient known to the ordinary sheet-metal worker. In addition to that, this very feature was disclosed in Patent No. 1,715,000 in figure 3 at the points "C" and "c" and in the specifications, page 1, line 97, where it is stated: "At certain locations upon the wall, particularly at points below the roof, as for example, at C, it is desirable to have the flashing extend upwardly from the layer of mortar in which it is embedded against the inner surface of the wall, and this is accomplished by flattening the opposite ridges of the flashing and bending the strip longitudinally thereof to form an upwardly extending flange c, * * *."

The courts have held the mere thinning of metal to facilitate bending is a simple mechanical expedient, and not subject to patent. See Williams v. Allied Metal Products Corp., 6 Cir., 107 F.2d 309, 310. The prior art discloses the use of this expedient. See Defendants' Exh. 8, "Practical Sheet Metal Work and Demonstrated Patterns" published in 1910, page 39; also "Galvanized Iron for Roofs and

Roof Drainage," published by American Rolling Mill Company in 1920, page 20.

██ The prior-art patents also make the disclosure of the use of the expedient of mashing down dovetail ribs. See Bayer Patent No. 451,550. We therefore conclude that the patent is not valid.

### Patent No. 1,871,585

Claims 3, 4, and 7 of this patent are in suit. They are as follows:

"3. A masonry wall structure including superposed courses of masonry bound together by joints of mortar and a sheet metal flashing embedded in the mortar between certain of said courses, and extending substantially from side to side of said wall for intercepting moisture of infiltration in said wall, and a series of locking means substantially of saw-tooth shape bonding said flashing and masonry courses securely together and providing a series of oppositely inclined recesses for the reception of the mortar substantially symmetrical about the axis of the mortar joint, the correspondingly inclined recesses of adjacent locking means serving to provide a bond between the flashing sheet and mortar against shifting of the sheet longitudinally in one direction and the corresponding oppositely inclined recesses of adjacent locking means serving to prevent longitudinal shifting of the sheet in the opposite direction, both of said recesses serving to provide a bond against vertical movement of the sheet and superposed masonry.

"4. A masonry wall structure provided with a through-wall flashing as set forth in claim 3 characterized by the provision of means for providing a permanent bond between said mortar and flashing preventing relative transverse shifting between the flashing and superposed courses of masonry."

"7. Flashings for insertion between layers of masonry and the like, consisting of sheet metal of desired width to extend substantially from side to side of the masonry wall bent to form a series of relatively short ribs extending transversely of the sheet, certain of said ribs being arranged obliquely of the sheet and angularly disposed with relation to others of said ribs, the metal adjacent the top edge of one rib extending laterally and downwardly to the lower edge of the next adjacent rib to provide relatively long longitudinal portions between and connecting said ribs and drainage channels contiguous to said ribs to collect and convey away any moisture that may infiltrate to the surface of the sheet."

It will be seen from the reading of these claims that they deal with sheet-metal flashings which were the subject-matter of patents hereinbefore discussed. Claim 3 is intended to cover a masonry wall structure having a metal flashing which is of saw-tooth form of flashing, instead of a dovetail flashing of the other patents hereinbefore discussed. Claim 4 covers the same matter as claim 3, with an added provision for a transverse interlock by means of oppositely tapered ridges. Claim 7 is for the flashing of claim 4.

██ We are of the opinion that claims 3 and 4 are invalid, because directed to an exhausted combination. If there is novelty in this patent, it must rest in claim 7, which is for saw-tooth form of the flashing. In claiming that the saw-tooth formation of this patent is novel, plaintiff takes a position at variance with the position it took with reference to Patent No. 1,715,000, in which plaintiff contended that the saw-tooth formation of defendants was the equivalent of the dovetail formation of Patent No. 1,715,000. The plaintiff would not be entitled to a second patent for the same structure, or its equivalent.

██ The structure disclosed in this Patent No. 1,871,585 is similar to that of Patent No. 1,715,000, with the exception of the saw-tooth formation, and the omission of one of the series of overhanging ribs of Patent No. 1,715,000. It is an established rule of patent law that the omission of a part with the corresponding omission of its function does not create any new or patentable invention. See Hamilton Standard Propeller Co. v. Fay-Egan Mfg. Co., 6 Cir., 101 F.2d 614; American Carriage Co. v. Wyeth, 6 Cir., 139 F. 389. We cannot see that the saw-tooth strip accomplishes any new or different result, and may be less useful, as it locks against longitudinal movement in one direction only. We cannot find either that the idea of the saw-tooth device to provide interlocking surfaces is new with Cheney. That idea is disclosed by Cornell Patent No. 21,-118 of August 10, 1858. In addition to that, Henry C. Travis of Travis, Wilks & Fingracom installed a flashing of saw-tooth formation in the chapel of Walter Reed Hospital in August, 1930, of which Cheney had knowledge; and his application for this patent was not filed till December 2,

1930. If there was invention in this saw-tooth formation, it was that of Travis, and not of Cheney. We therefore hold this Patent No. 1,871,585 invalid for want of novelty.

### Patent No. 1,939,619.

Claim 8 of this patent is in suit. It reads as follows: "8. A sheet metal flashing for masonry structures and the like comprising a sheet of metal of desired width to extend through a masonry wall and provided with transversely extending parallel ribs and grooves across the sheet so that the grooved portions thereof intermediate said ribs constitute drainage areas for draining water of infiltration across said sheet and from said wall, the ribs of said sheet having side faces presenting undercut recesses on opposite sides of the sheet for the reception of mortar which, upon hardening, will bond the flashing sheet in said mortar against movement vertically and longitudinally, the ends of said sheet being adapted for cooperative engagement with adjacent sheets whereby a plurality of sheets may be connected together to form a continuous metal flashing."

This claim differs only from the subject matter claimed in Cheney Patent No. 1,-715,000 hereinbefore discussed, in that the ribs of the flashing are parallel. The plaintiff contends that two forms of flashing are shown in this Patent No. 1,715,000 —one form being shown in Figure 1, and the other in Figure 5. The application for this patent was filed November 30, 1927, and the patent was granted May 28, 1929. Patent No. 1,939,619 was granted December 12, 1933, on an application filed February 3, 1932, which states that the invention "relates in part to features disclosed in my Patents Nos. 1,715,000 and 1,728,955 * * and the subject-matter of the present application, which presents certain specific characteristics not claimed in my prior patents above referred to, is taken from my prior copending application, Ser. No. 499,498, filed December 2, 1930, of which this application is a division."

In this situation, we cannot see that there is any tie-in between plaintiff's first patent application and the application on which Patent No. 1,939,619 was granted, because there is an interim between November 30, 1927, the date when the application for Patent No. 1,715,000 was filed, and

December 2, 1930 (the date when the application for Patent No. 1,728,955 was filed), during which there was no copending application on file in the Patent Office covering the same subject matter of the first patent. We therefore hold that what was shown in Patent No. 1,715,000 and not claimed, is presumed to be dedicated to the public.

As to Patent No. 1,728,955, we cannot find that it is at all helpful on plaintiff's theory of divisional application. Claim No. 8 was inserted by amendment of November 3, 1933, to the application for Patent No. 1,939,619. It was introduced as Claim 16, which became Claim 8 of the patent; and it was stated to be directed to the same subject-matter as Claim 12, which was first introduced into the application by an amendment filed July 27, 1933, which apparently was the first time any claim was made for novelty in parallel ribs and grooves. We therefore have a gap of four years from the date of issue of Patent No. 1,715,000 on May 28, 1929, to July 23, 1933, during which time there was no claim of novelty resting in the parallel-rib construction disclosed in Figure 5 of Patent No. 1,715,000 in any pending application. This is, therefore, not a case for the application of the rule as to copending application. See Summerhays v. Coe, Com'r of Patents, 70 App.D.C. 194, 105 F.2d 73; Ely Norris Safe Co. v. Mosler Safe Co., 2 Cir., 62 F. 2d 524; Webster Electric Co. v. Splitdorf Electrical Co., 264 U.S. 463, 471, 44 S.Ct. 342, 68 L.Ed. 792.

As to the alleged copending application for patent filed December 2, 1930, the parallel-rib structure was admittedly in use for more than two years prior to that time, as shown in Cheney catalogue marked Defendants' Exhibit C, which stated that in September, 1928, Hegeman-Harris Co. Inc., had used this structure in Dartmouth College.

The prior art also shows the parallel-rib-and-groove structure. See Schlafly Patents Nos. 1,093,653 and 840,016. We therefore conclude that Cheney Patent No. 1,939,619 is invalid.

Having the views above expressed as to the validity and non-infringement of the patents in suit, we find it unnecessary to pass on the question of whether plaintiff's right to relief is barred by laches and unfair conduct of plaintiff in notifying cus-

tomers of defendants of the alleged infringement of plaintiff's patents.

We conclude that the plaintiff's complaint herein should be dismissed.

### Counterclaim.

As to defendants' counterclaim in which defendants are seeking an injunction and accounting against plaintiff because of alleged malicious threatening of persons with whom defendants did, or attempted to do business for the purpose of discouraging the purchase of defendants' material, we cannot find that defendants have made out a case. As we view the law, notices given, or circulars distributed, to warn against infringement, are legal and proper. It is only when they are given and distributed in bad faith and solely for the purpose of destroying the business of another that they be enjoined. See A. B. Farquhar Co. v. National Harrow Co., 3 Cir., 102 F. 714, 49 L.R.A. 755.

We cannot find that the plaintiff acted in bad faith. It owned patents which it believed to be valid, and notified defendants and their customers of alleged infringement. We see nothing wrong in this. The defendants' counterclaim will be dismissed.

Findings of fact and conclusions of law in accordance with this opinion are filed herewith.