Howard **BATEMAN** and Marguerite B. Jones, Partners, Trading as Ernest Jones Company, Appellants,

v.

**FORD MOTOR COMPANY.**

No. 13901.

United States Court of Appeals Third Circuit.

Argued Feb. 23, 1962.

Decided March 28, 1962.

Rehearing Denied April 17, 1962.

Israel Packel, Philadelphia, Pa. (H. James Sautter, Daniel Lowenthal, Philadelphia, Pa., Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., of counsel, on the brief), for appellants.

Harold E. Kohn, Philadelphia, Pa. (Aaron M. Fine, Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and GANEY, Circuit Judges.

GOODRICH, Circuit Judge.

Plaintiff brought, in the District Court for the Eastern District of Pennsylvania, a suit for an injunction and damages under the "Dealer's Day in Court Act," 15 U.S.C.A. §§ 1221–1225. He asked for a preliminary injunction. This was denied on the ground that the statutory right to damages is exclusive, and the plaintiff appeals.

The statute under which the action is brought, 15 U.S.C.A. § 1222, provides as follows:

"An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer from and after August 8, 1956 to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: *Provided,* That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith." [1]

The purpose of the statute was stated in the report of the House Committee prior to enactment. The report says:

"The bill as amended proceeds from the conclusion that in the automobile industry concentration of economic power has increased to the degree that traditional contractual

---

1. "Good faith" is defined in § 1221(e) in the following language:
   "The term 'good faith' shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the

one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided,* That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith."

concepts are no longer adequate to protect the automobile dealers under their franchises." H.Rep. No. 2850, 84th Cong., 2d Sess. (1956), 1956–3 U.S.Code Cong. & Admin.News, pp. 4596, 4597.

■ The first point which the defendant makes is that the question is moot, since the termination of the franchise by the defendant has already taken place. We cannot take this argument seriously. The question was raised in the court below and the appeal from the denial of the injunction was brought before the termination date. In other words, the question was in litigation in this Court and, of course, we retain jurisdiction until the question is settled. Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, 90 L.Ed. 1199 (1946).

■ The plaintiff gives two grounds for his appeal. The first is that this statute is, according to the legislative description thereof, a supplement to the antitrust laws. That is what the title to the law says.[2] Since there is a provision for injunctive relief in the Clayton Act,[3] the argument runs, that provision should carry over to this Dealer's Day in Court Act. We are not impressed with this argument. While the statute under consideration is called a supplement to the antitrust laws, we think the subject matter is so different that there is little similarity between them. It would be highly artificial to carry over the injunctive provision of the older act to this new statute. This is exactly what the Supreme Court held in Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed. 2d 340 (1958). There the Court said that, while section 1 of the Robinson-Patman Act did amend the Clayton Act, section 3 did not (15 U.S.C.A. §§ 13, 13a). Therefore, a private action for treble damages and injunctive relief based on the prohibitions of section 3 could not be brought under sections 4 and 16 of the Clayton Act, respectively. A somewhat similar holding with regard to the act here in issue is Schnabel v. Volkswagen of America, Inc., 185 F.Supp. 122 (N.D. Iowa 1960). These cases, we think, show that the appellant has no right to an injunction based on section 16 of the Clayton Act.[4]

■ The appellant's second ground, however, has more body to it. It is to the effect that the court should exercise its equitable powers to make more effective the relief provided in the statute. Here, cases like Carnation and Paine Lumber Co. v. Neal, 244 U.S. 459, 37 S.Ct. 718, 61 L.Ed. 1256 (1917), which deal with whether a private person is invested by a specific statutory provision with

---

2. The title of the law is:
   "To supplement the antitrust laws of the United States, in order to balance the power now heavily weighted in favor of automobile manufacturers, by enabling franchise automobile dealers to bring suit in the district courts of the United States to recover damages sustained by reason of the failure of automobile manufacturers to act in good faith in complying with the terms of franchises or in terminating or not renewing franchises with their dealers." 70 Stat. 1125 (1956).

3. Clayton Act § 16, 15 U.S.C.A. § 26.

4. The defendant also cites as supporting his position Paine Lumber Co. v. Neal, 244 U.S. 459, 37 S.Ct. 718, 61 L.Ed. 1256 (1917). That case, however, merely held that a private person cannot maintain a suit for an injunction under section 4 of the Sherman Act, which imposes a duty upon the several United States attorneys to institute proceedings in equity to restrain violations of that act. 15 U.S.C.A. § 4. Paine is not unique in its holding that, where a statute charges a public official with its enforcement, private persons may not maintain an action based upon that statute. See, e. g., Meyercheck v. Givens, 180 F. 2d 221 (7th Cir. 1950) (only Housing Expediter may secure injunction against violations of Housing and Rent Act); Johnson v. San Diego Waiters Union, 190 F.Supp. 444 (S.D.Cal.1961) (only Secretary of Labor may sue to set aside union election); International Longshoremen's Union etc. v. Sunset Line & Twine Co., 77 F.Supp. 119 (N.D.Cal.1948) (only NLRB may secure injunctive relief pending adjudication of unfair labor practice charges). The Dealer's Day in Court Act, however, confers no duties on public officials; it deals solely with the rights of private parties *inter se*.

a right to maintain a bill for injunctive relief, are not applicable. This second argument is addressed to the general equitable powers of the court.

It may be conceded that the legislative history gives no indication that the subject of supplemental equitable relief was considered. That fact, to our minds, does not advance the ball in either direction.[5] We know that the judicial power of the United States applies to all cases "in Law and Equity." Article III, section 2 of the Constitution so says. From the very beginning of equity one of the bases of action by the chancellor was to make effective the rights which the law gave a party. The purpose of the statute here in question, as its title says, was to balance the power "now heavily weighted in favor of automobile manufacturers." To make the remedy provided by the statute effective in accomplishing what is meant to be accomplished, we think that the dealer needs equity help in keeping his business going while his legal claim is being tested. A judgment for damages acquired years after his franchise has been taken away and his business obliterated is small consolation to one who, as here, has had a Ford franchise since 1933.

This general equitable power of the court to give injunctive relief to make more effective a remedy provided by law is long established and well known. Pomeroy states the rule as follows:

"Wherever a right exists or is created, by contract, by the ownership of property or otherwise, cognizable by law, *a violation of that right will be prohibited,* unless there are other considerations of policy or expediency which forbid a resort to this prohibitive remedy. *The restraining power of equity extends, therefore, through the whole range of rights and duties which are recognized by the law, and would be applied to every case of intended violation, were it not for certain reasons of expediency and policy which control and limit its exercise."* 4 Pomeroy, Equity Jurisprudence § 1338 (5th ed. 1941). (Emphasis original.)

That here the right at law was conferred by an act of Congress does not require departure from the general rule stated above. The statute may be viewed as writing into every dealer franchise agreement a term that the manufacturer will not terminate the relationship in bad faith.[6] In any event, the bare fact that Congress by statute has provided a right at law without express provision for injunctive relief does not preclude the exercise of the general powers of a court of equity.

The suggestion was made in argument that the statute could not have been meant to compel a motor company to carry a dealer's franchise indefinitely. That is agreed. A franchise is not a marriage for life. And if a termination turns out to be made, in the statutory language, "in good faith," the dealer is certainly entitled no longer to protection. Further, within the terms of the contract and the statute, the manufacturer may terminate

5. In the context of whether a given statute makes the issuance of an injunction mandatory upon a showing of certain facts, however, it has been said that "courts are not to presume a legislative intention to rigidify the traditionally flexible equity practice of granting or withholding injunctive relief in the exercise of sound judicial discretion." Esquire, Inc. v. Esquire Slipper Mfg. Co., 243 F.2d 540, 544 (1st Cir. 1957), citing Hecht Co. v. Bowles, 321 U.S. 321, 330, 64 S.Ct. 587, 88 L.Ed. 754 (1944).

6. Throughout the Senate debate on the bill, there were various statements that the statute would write into dealer-manufacturer contracts a term which had not existed previously. Thus, Senator Allott, in discussing possible constitutional objections to the act, said: "The bill would incorporate in the franchise a term, a condition, and a right, as the report of the committee says, which did not previously exist." 108 Cong.Rec. 10577 (1956). And Senator Kefauver referred to the bill as one "which sets forth the method and the way the contracts between the automobile companies and the dealers shall be carried out." Id. at 10569.

the contract if he acts in good faith. No protection should extend longer than the termination made in good faith. It is hardly a new idea for a court to enjoin a defendant from doing in bad faith what he would be legally privileged to do if he acted in good faith. For example, the right of a patent owner to warn against alleged infringement is unquestioned. See, e. g., Cheney Co. v. Cunningham, 37 F.Supp. 224 (W.D.Pa. 1941), aff'd per curiam, 127 F.2d 294 (3d Cir. 1942). But for generations courts have issued injunctions against patent holders who circulated notices of infringement in bad faith. See, e. g., American Ball Co. v. Federal Cartridge Corp., 70 F.2d 579 (8th Cir. 1934); A. B. Farquhar Co. v. National Harrow Co., 102 Fed. 714 (3d Cir. 1900).

It is also to be borne in mind that an injunction, if granted, is necessarily to protect both parties, and the bond given by him who secures the injunction may prove an embarrassing burden if he cannot maintain his case.

We note that the Sixth Circuit, in a case involving a somewhat similar franchise agreement (though not one in the automobile field), denied an injunction against interference with the franchise because the court thought it would be too difficult to enforce. Bach v. Friden Calculating Mach. Co., 155 F.2d 361 (6th Cir. 1946). Any difficulty of enforcement here does not impress us. All the defendant need do is to refrain from acting in bad faith, as it has presumably so refrained during most—if not all—of the twenty-nine years this franchise has existed.

We have little authority to guide us in the question here presented. The act is new and answers to questions arising under it have not yet been developed. But the aid of equity making more effective legal rights is neither new nor novel.

The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.