**SCUNCIO MOTORS, INC., Plaintiff, Appellant,**

v.

**SUBARU OF NEW ENGLAND, INC., Defendant, Appellee.**

**No. 83–1009.**

United States Court of Appeals, First Circuit.

Argued April 7, 1983.

Decided Aug. 17, 1983.

Joshua Teverow, Providence, R.I., with whom Letts, Quinn & Licht, P.C., Providence, R.I., was on brief, for plaintiff, appellant.

Robert W. Mahoney, Boston, Mass., with whom Donald R. Frederico, Hale & Dorr, Boston, Mass., George M. Vetter, Jr., and Vetter & White, Providence, R.I., were on brief, for defendant, appellee.

Before HAYNSWORTH,* Senior Circuit Judge, COFFIN and BREYER, Circuit Judges.

HAYNSWORTH, Senior Circuit Judge:

In this case in the diversity jurisdiction the question is the validity under the laws of Rhode Island of a termination of an automobile dealership franchise.

In 1972, Scuncio Motors, Inc. became a franchised dealer in Subaru automobiles in Peacedale, Rhode Island. In August 1982, Subaru of New England ("SNE"), the regional distributor of Subaru vehicles, undertook to terminate Scuncio's franchise, and Scuncio sought injunctive relief, contending that the termination was unlawful under Rhode Island statutes.

The requested relief was denied, and we now affirm.

## I.

Despite a strong trend of growing sales of Subaru vehicles in the United States, Scuncio's sales did not reflect the trend. It consistently lagged behind other dealers in the region. As early as 1974, representatives of Scuncio and SNE began discussing changes designed to increase Scuncio's sales. Scuncio occupied a small facility of only 11,450 square feet, and one of the subjects of discussion was the expansion of that facility or relocation to a larger one.

In May 1981, SNE sent to Scuncio several documents stipulating minimum standards

for dealerships in the region respecting capital, inventory, facilities and personnel. It also sent a dealer profile form comparing Scuncio's operation to the regional minimum standards. That profile showed the deficiencies in Scuncio's facility. In letters, SNE emphasized the importance of verification by Scuncio of the accuracy of the dealer profile. After reviewing the profile with his lawyer, Mr. Scuncio signed the document without expression of any complaint or reservation.

In July 1981, Mr. Scuncio and his lawyer met with representatives of SNE to negotiate a new franchise agreement. The initial proposal of SNE contained a provision requiring Scuncio to relocate to a facility within its franchise area to meet the standards of Subaru of America and SNE. Scuncio sought a number of changes in the agreement, to all of which SNE acceded. He wanted added to his franchise area the town of Narragansett in substitution for the town of Westerly. He wanted an option of relocation to Newport with the corresponding assignment to him of a new franchise area. He wished an extension by several months of the dates proposed by SNE for completion of his relocation. Though he obtained SNE's agreement to each of his requests and suggestions, he did not question the wisdom or necessity of the relocation.

A few days later, SNE sent to Scuncio a proposed agreement which had been revised in accordance with the tentative verbal understanding. After conferring with his lawyer, Mr. Scuncio then requested and obtained a deletion of a formal, written acknowledgment of the inadequacy of his present facilities. The new agreement was then executed on behalf of both parties.

The new, executed agreement provided that Scuncio would relocate its facility by October 1, 1982. There was a schedule for transitional stages and standards with which the new facility was to comply. There was an acknowledgment by Scuncio that the relocation schedule was reasonable

* Of the Fourth Circuit, sitting by designation.

and feasible, and an affirmative statement of understanding that Scuncio's failure to comply with the relocation requirement would be a substantial breach of the agreement and sufficient cause for termination of Scuncio's franchise.

Scuncio broke the contract when, admittedly, it failed to initiate steps to effect its relocation. On August 25, 1982, SNE gave formal notice of termination, to be effective on December 1, 1982. Scuncio countered with a complaint in the state court seeking injunctive, declaratory and monetary relief. After removal of the action by the defendant to the United States District Court for the District of Rhode Island and a full evidentiary hearing, the district court denied the requested injunctive relief. 555 F.Supp. 1121 (D.C.R.I.1982).

## II.

In 1982, after execution of the 1981 franchise agreement but before SNE's attempt to terminate it, the Rhode Island legislature amended its "Dealers' Law" to provide:

It shall be deemed a violation of this chapter for a manufacturer, or officer, agent or other representative thereof:

.    .    .    .    .

(19) To require that a dealer expand facilities without a guarantee of sufficient supply of new motor vehicles to justify such an expansion or to require that a dealer expand facilities to a greater degree than is necessary to sell and service the number of vehicles that said dealer sold and serviced in the most recent calendar year.

R.I.G.L. 31–5.1–4(C) (1982). Another provision, already a part of the Dealers' Law, provided:

*Contracts Void*—Any contract or part thereof or practice thereunder in violation of any provision of this chapter shall

be deemed against public policy and shall be void and unenforceable.

R.I.G.L. 35–5.1–14 (1956).

It is Scuncio's position that the relocation provisions of the franchise agreement are unenforceable because SNE "required" Scuncio to expand its facilities in violation of the provisions of the 1982 amendment. It is contended that the entire section of the agreement relating to relocation is void under the earlier provisions of Rhode Island's Dealers' Law.

## III.

The 1982 amendment can apply to this 1981 contract only if it can be read to regulate the grounds of franchise termination or if it can be properly applied retroactively to alter the contract.[1] Neither of these constructions is tenable.

The language of the 1982 amendment is prospective. On its face, a regulation of a "requirement," in the context of a freely negotiated contract, would seem to speak to the time at which the contractual obligation was assumed. The statute does not purport to speak of termination, or notices of terminations, of franchised dealers' contracts.

The language of the 1982 amendment does not manifest sufficiently, if at all, a legislature intent to give it retroactive effect to invalidate preexisting contractual rights and obligations. The Rhode Island cases consistently have required "clear, strong language" expressing an intent to give a substantive statute retroactive effect before the presumption of prospective effect may be overcome. *See, e.g., State v. Healy,* R.I., 410 A.2d 432, 434 (1980); *State v. Mulholland,* 117 R.I. 321, 323, 366 A.2d 153, 154 (1976); *Cipriano v. Personnel Appeal Board,* 114 R.I. 141, 143 n. 1, 330 A.2d 71, 73 n. 1 (1975); *Norton v. Paolino,* 113 R.I. 728, 733, 327 A.2d 275, 278 (1974); *Opinion to the Governor,* 91 R.I. 187, 190, 162 A.2d 814, 816 (1960). No such intent

---

1. Even if the 1982 amendment were applicable, Scuncio has hardly shown a violation of it. The course of dealing up to the 1981 agreement manifested a give-and-take uncharacteristic of the adhesive agreements at which the Dealers'

Law is aimed. The word "require," as used in the 1982 amendment, hardly comprehends the kind of bargained for accommodation that culminated in the 1981 contract.

can be inferred from the fact that the 1982 amendment became effective upon its passage. That provision tells one only when the amendment was to have the force of law, but speaks not at all to the statute's reach. Nor is Scuncio's position assisted by reference to the "Contracts Void" section of the preexisting statute, for that section invalidates nothing in this contract unless the 1982 amendment is applicable to it or to any attempted termination for noncompliance with Scuncio's contractual obligation to relocate.

Scuncio relies upon *Anderson's Vehicle Sales, Inc. v. OMC–Lincoln,* 93 Mich.App. 404, 287 N.W.2d 247 (1980), where, on facts somewhat similar to those here, a Michigan statute was held applicable to a post-enactment termination of a preexisting contract. The Michigan statute, however, purported to regulate terminations notwithstanding the terms of a dealer's contract. That provision contained some suggestion of an intention that the statute be given a retroactive application to preexisting contracts, but there is no comparable language in the Rhode Island statute. Indeed, there is nothing to counter Rhode Island's strong presumption that a statute regulating substantive rights be given prospective effect only.

A similar presumption against retroactive legislation prevented an Illinois court from applying *OMC–Lincoln* in circumstances comparable to those here. In *McAleer Buick-Pontiac Co. v. General Motors Corp.,* 95 Ill.App.3d 111, 50 Ill.Dec. 500, 419 N.E.2d 608 (1981), the Illinois court refused to apply an Illinois statute to a post-enactment termination of a preexisting automobile dealer's contract. In circumstances comparable to those here, the Illinois court declined to apply *OMC–Lincoln.*

Any other construction of Rhode Island's 1982 amendment would present a serious constitutional question of contract impairment, as the Illinois court noted in *McAleer Buick-Pontiac.* This consideration would reenforce our construction of the Rhode Island statute, if any reenforcement were needed. We give the statute, however, what seems to be its plain meaning.

## IV.

For these reasons, the judgment of the district court is affirmed.

AFFIRMED.