CHIA–HSIN (CHARLES) HUANG, Tsu-Hua (Sue) Huang, Plaintiffs,

v.

HOLIDAY INNS, INC., a corporation, Defendant.

No. CV 84–5909–RJK (JRx).

United States District Court, C.D. California.

Sept. 11, 1984.

Adams, Duque & Hazeltine, Rex Heeseman, Los Angeles, Cal., for plaintiffs.

MacDonald, Halsted & Laybourne, John R. Shiner, Darlene E. Rabe, Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, Senior District Judge.

On August 6, 1984, plaintiffs Chia-Hsin Huang and Tsu-Hua Huang, owners of a hotel located in Orange, California, filed a complaint for injunctive and declaratory relief in the Superior Court for the County of Orange, seeking to enjoin Holiday Inns from terminating the Huang's franchise. Holiday Inns properly removed the action to this Court pursuant to the provisions of 28 U.S.C. § 1441(a). On August 16, 1984, one day prior to the date on which termination of the franchise agreement was to occur, plaintiffs filed an application for a temporary restraining order prohibiting defendant from terminating the franchise.

This Court granted plaintiffs' request for temporary relief on August 17, and set the matter down for hearing on the plaintiffs' application for a preliminary injunction on August 27, 1984. At the conclusion of the hearing on August 27, the Court took the matter under advisement.

FACTS

Plaintiffs purchased the hotel located at 3727 West Chapman Avenue, Orange, California, in June, 1980, for the sum of $5.3 million dollars. At the time the Huangs purchased the hotel, it was already a franchised Holiday Inn. The seller, Edith Davis, had previously been a franchisee. As part of the consideration for the purchase of the hotel, the Huangs executed an All-Inclusive Deed of Trust to secure a purchase money promissory note in the principal sum of $4,363,000. The Deed of Trust contained a provision providing that a termination or cancellation of the Holiday Inns Franchise Agreement caused by the Huangs would be deemed a default, allowing the beneficiary to accelerate the entire remaining balance of the note and declare the same due and payable.

On November 23, 1981, plaintiffs entered into a License Agreement ("Agreement"), dated as of June 20, 1980, with defendant. Under the Agreement, Holiday Inns licensed plaintiffs to operate a Holiday Inn hotel in Orange, California, and to obtain the benefits of the Holiday Inn System, trade name, and service marks. By the terms of the Agreement, the Huangs agreed to adhere to the Holiday Inn quality standards as revised or amended. Specifically, the plaintiffs were obligated under the Agreement to "maintain the Inn in a clean, safe and orderly manner; provide efficient, courteous and high-quality service to the public in strict accordance with the System ... [and] comply in all respects with the [Holiday Inns Standards] Manual." *See* "Agreement" Paragraph 4. The Agreement provided further that Holiday Inns could "require substantial modernization, rehabilitation and other 'upgrading' of the Inn from time to time," subject to the caveat that any change in the standards

shown to be arbitrary and capricious would be rescinded by the Licensor. *See* "Agreement," Paragraph 5.

Holiday Inns monitors compliance with its quality standards through regular inspections, product reviews, and evaluations conducted at all Holiday Inn hotels. In May, 1983, Holiday Inns began a new product review and evaluation program that was designed to more accurately identify unacceptable product quality. One of the key features of the new program was that inspections would be made by the District Director, rather than by the array of different inspectors who had previously evaluated each hotel. On May 4, defendant mailed a letter to each of its franchisees advising them of the new program and describing its key features. On October 17, 1983, defendant sent a letter to all franchisees and general managers, enclosing a booklet explaining the system in detail. The booklet explained that the new program categorized 17 hotel areas as either "Critical," "Guest Room" or "Support." A hotel would receive an overall evaluation of "Unacceptable" for (1) failure in two "Critical" area criteria; (2) failure in any "Guest Room" area criteria; or (3) failure in any three "Support" area criteria. The new program did not change the standards by which a Holiday Inn hotel's product quality was judged. Rather, it was designed to more accurately determine whether a particular Holiday Inn franchise was in compliance with the quality standards then in effect. In fact, the standards set forth in the Holiday Inns Standards Manual have not changed substantially since April, 1982.

On November 5, 1983, in accordance with the new program, Holiday Inns District Director Randy Hulce conducted a "courtesy" evaluation at plaintiffs' hotel. On November 15, plaintiffs were sent a letter advising them that they had received an overall product evaluation of "Unacceptable." The defendant enclosed with the letter a list of the deficiencies that formed the basis of the evaluation. The courtesy evaluation did not count as a formal evaluation.

On February 15, 1984, Hulce conducted the first formal evaluation of plaintiffs' hotel under the new system. The hotel received a grade of "Unacceptable," failing in all three area categories. A letter of February 22 informed plaintiffs of this evaluation, and further advised them that Holiday Inns would consider issuance of a default and termination notice if a followup evaluation performed within the next sixty days resulted in a second consecutive grade of unacceptable. Again, the specific deficiencies that gave rise to the failing grade were listed on a chart. The deficiencies included cracked windows, damaged and discolored walls in the lobby, bad odors, inadequate lighting and worn basins in the restroom facilities, inoperative smoke detectors, poultry stored at room temperature, improper box and mattress support for beds in guest rooms, and dated wall coverings and furnishings in the lobby and guest rooms.

On April 26, Hulce again inspected the hotel. His evaluation resulted in a second consecutive "Unacceptable" rating. On this evaluation, the hotel failed four "Critical" area criteria, two "Guest Room" criteria, and three "Support" area criteria. By letter dated May 8, defendant notified plaintiffs of the rating, and advised plaintiffs that two consecutive "Unacceptable" grades were grounds for the issuance of a default and termination notice. The letter informed plaintiffs that the matter would be taken up by the Product Management Department, and was accompanied by a list of the deficiencies observed during the inspection.

In a letter of May 18, 1984, defendant notified plaintiffs that, by reason of the substandard condition of plaintiffs' hotel, they were in breach of the Agreement. The letter stated that it constituted notice of termination and that termination and removal would occur on July 30, 1984 if plaintiffs failed to cure the noted deficiencies or did not receive an "Acceptable" rating on the next product evaluation, scheduled to be conducted on June 28, 1984.

In a letter dated June 14, plaintiffs informed David Houghton, Director of Quality Assurance for Holiday Inns, that they had recently accomplished renovations costing $55,000, and requested that they be given an extension of 90 days on the upcoming inspection. Huang's letter detailed the repairs that the plaintiffs had undertaken in an effort to correct the deficiencies listed since the product review of April 26. The plaintiffs' request for an extension was denied. On June 29, a special product review evaluation was conducted by District Director Hulce. This evaluation also resulted in an "Unacceptable" grade, and plaintiffs were so notified by letter of July 12, 1984. By letter dated July 27, the defendant advised plaintiffs that the Franchise Committee had decided to terminate their franchise effective August 17, 1984, and that the hotel would be removed from the Holiday Inn System on that date as a result of plaintiffs' failure to cure the product quality deficiencies.

## DISCUSSION

### Standard for Preliminary Injunction

■ In the Ninth Circuit, the moving party may obtain a preliminary injunction by demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions are raised and the balance of hardships tip sharply in its favor. *See Lopez v. Heckler*, 725 F.2d 1489, 1498 (9th Cir.1984). These two tests are not separate, but rather represent the extremes of a single continuum. *Id.* The critical element is the relative hardship to the parties. If the balance of harm tips sharply toward the moving party, then he need not show as "robust a likelihood of success on the merits as when the balance tips less decidedly." *Benda v. Grand Lodge of International Association of Machinists*, 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). The "irreducible minimum," however, is that the moving party demonstrate a "fair chance of success on the merits," or "questions ... serious enough to require litigation." *Id.*

### Irreparable Injury/Balance of Hardships

Plaintiffs allege that two types of harm will occur if the Agreement is terminated. First, plaintiffs argue that they will suffer diminished revenues if their hotel is no longer part of the Holiday Inn system. Second, they contend that termination of the franchise will in effect destroy their business. Specifically, plaintiffs note that a termination of the franchise caused by plaintiffs will trigger a default under the existing deed of trust against the hotel, causing the $3.6 million balance of the deed to accelerate and be due in full. The plaintiffs declare that they have no present ability to make a lump sum payment of this magnitude. Clearly, any harm suffered in the form of diminished revenues would be compensable in monetary damages, and thus would not be irreparable. Courts have generally held, however, that the destruction of a franchisee's business does constitute irreparable harm. *See, e.g., Batemen v. Ford Motor Co.*, 302 F.2d 63, 66 (3d Cir.1962); *Chinetti-Garthwaite v. Ferrari Societe*, 463 F.Supp. 73, 75 (E.D. Pa.1978).

The defendant argues that the balance of hardships actually tips in its favor, because the goodwill established over a period of years by Holiday Inns dissipates daily as plaintiffs are allowed to maintain a substandard product. The Court is not persuaded by this argument, and finds that the balance of hardships in this case tips decidedly in favor of plaintiffs, who stand to lose their entire business under the terms of the deed of trust if the franchise is terminated.

### Assessment of the Merits

In order to obtain a preliminary injunction under the Ninth Circuit standard, the plaintiffs must also show a probability of success on the merits or that their claim raises "serious questions" of law. *See Lopez v. Heckler*, 725 F.2d at 1498. The Court must now determine whether plaintiffs have met their burden of demonstrating as an irreducible minimum "a fair

chance of success on the merits," or "questions ... serious enough to require litigation." *Benda v. Grand Lodge of International Association of Machinists,* 584 F.2d at 315; *Sports Form, Inc. v. United Press International, Inc.,* 686 F.2d 750, 753 (9th Cir.1982).

In an attempt to make the requisite showing on the merits, the plaintiffs contend that the defendant engaged in "arbitrary and capricious conduct" in violation of the franchise agreement and the case law. The Agreement provides:

> Any action taken by Licensor in the enforcement of this agreement that is shown to be arbitrary and capricious will be rescinded by Licensor to the extent feasible, but wide discretion and latitude will be allowed to the judgment of Licensor in the discharge of its overriding responsibility to maintain and improve the standards, performance and facilities of the inns using the Holiday name.

*See* "Agreement," Paragraph 8.

The Court is mindful that if, after a denial of plaintiffs' application for a preliminary injunction, the defendant were shown to have engaged in arbitrary and capricious conduct that would give rise to rescission of the decision to terminate the franchise, the plaintiffs' loss of their business at that point would be irreparable. Accordingly, a showing by the plaintiffs at this preliminary stage that there is a likelihood or reasonable possibility that the defendant acted in an arbitrary and capricious manner as set forth in the Agreement would entitle plaintiffs to injunctive relief.

Nonetheless, the language of the Agreement provides Holiday Inns with broad discretion and latitude to uphold the quality standards within the Holiday Inn system. Moreover, a franchisor is not precluded from exercising its right to terminate a franchise in a reasonable, good faith manner merely because the franchisee will suffer great hardship as a result of the termination.

The plaintiffs, in their attempt to show that the defendants engaged in arbitrary and capricious conduct under the Agreement, do not dispute the fact that their hotel is not in compliance with the quality standards referenced in the Agreement and set forth in detail in the Holiday Inn Standards Manual. Nor do plaintiffs dispute the ability of defendant to impose such standards. In addition, plaintiffs do not deny receiving the letters, evaluations, and lists of deficiencies provided by defendant. Rather, plaintiffs contend that defendants engaged in the arbitrary and capricious conduct in violation of the Agreement by failing to provide plaintiffs with (1) reasonable notice of the exact nature of the deficiencies and what was required to make repairs and improvements; and (2) a reasonable time in which to remedy the deficiencies.

The evidence on the record simply does not support plaintiffs' contention that the defendant did not provide them with adequate notice of the nature of the deficiencies and the appropriate corrective measures to be taken. Each of the three letters notifying plaintiffs that they had received an "Unacceptable" rating, as well as the courtesy evaluation given in November, 1983, was accompanied by a chart listing both the specific deficiencies that formed the basis of the evaluation and the appropriate remedy for each deficiency. For example, the evaluation form for the first official "Unacceptable" rating, dated February 22, 1984, divided the hotel into 86 separate areas, identified the issue, and stated the deficiency. The deficiencies listed ranged from "ceiling stained/damaged—repair" to "storing poultry at room temperature—correct hazardous situation/keep poultry refrigerated." These same categories were then evaluated on the subsequent inspections of the hotel on April 26 and June 29. If the deficiencies noted on the February 22 evaluation had not been remedied at the time of the April and June inspections, they again were listed on the evaluation forms—with a notation on the far left column as to the date that the deficiency was first identified.

The plaintiffs and the general manager of the hotel were invited to accompany the

inspector as he made his rounds on each of the four visits to the hotel. Further, the cover letters sent to plaintiffs on November 14, 1983, February 22, 1984, and May 18, 1984 notifying plaintiffs of "Unacceptable" evaluations advised plaintiffs to contact Holiday Inns for further assistance. There is no indication on the record that the plaintiffs voiced any objection about the vagueness of the deficiencies listed at any time prior to bringing this action. The Court finds that the defendant provided plaintiffs with ample notice both of the specific nature of the deficiencies and of the necessary corrective measures to be taken by plaintiffs.

Plaintiffs' second argument is that the defendant engaged in arbitrary and capricious conduct by not giving plaintiffs adequate time in which to correct the deficiencies. Paragraph 14(b) of the Agreement provides:

> The license will terminate on the termination date specified in any notice by Licensor to Licensee (without any further notice unless required by law), provided that (i) *the notice is mailed at least thirty days (or longer if required by law) in advance of the termination date,* (ii) the notice reasonably identifies one or more breaches of the Licensee's obligations, and (iii) the breaches are not fully remedied at the termination date.

"Agreement," Paragraph 14(b) (emphasis added).

The defendant clearly satisfied the notice requirements of the Agreement by mailing to plaintiffs the letter dated May 18, 1984. This letter provided notice of plaintiffs' breach of the Agreement and notice of termination, and designated July 30, 1984 (later extended to August 17) as the termination date. The two and one-half month period from May 18 to July 30 is far in excess of the 30 day notice required by the Agreement. The defendant also followed the procedures set forth in the guidelines to the new evaluation system, by waiting until the plaintiffs received a second consecutive "Unacceptable" evaluation prior to sending out a notice of default and termi-

nation. The plaintiffs were warned in the letter accompanying their first "Unacceptable" evaluation, dated February 22, 1984, that a second consecutive "Unacceptable" evaluation would result in notice of termination. This letter and evaluation clearly put the plaintiffs on notice of the potential consequences of failure to remedy the deficiencies. At that time, the plaintiffs had more than four months to correct the deficiencies prior to the final evaluation on June 27, and almost six months remained until the actual date of termination, August 17th.

The plaintiffs argue that notwithstanding the notice provision contained in the Agreement, they are entitled to injunctive relief under the case law. Specifically, the plaintiffs cite two cases which held that a franchisee is entitled to damages where the franchisor terminates the franchise despite the franchisee's best efforts to comply with the franchisor's demand that improvements be accomplished in an unreasonably short period of time. *See H.C. Blackwell Co. v. Kenworth Truck Co.,* 620 F.2d 104, 107 (5th Cir.1980); *Shor-Line Rambler, Inc. v. American Motors Sales Corp.,* 543 F.2d 601, 603–04 (7th Cir.1976). In *Blackwell* and *Shor-Line,* a jury award of damages to a franchisee who had brought an action under the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221 *et seq.,* was upheld on the ground that the franchisor had violated the statute by conditioning renewal of a franchise upon satisfaction of a series of demands that were burdensome and unreasonable. In each case, the court noted that the issue of the franchisor's bad faith "involves its intentions as manifested by its actions," and is a factual determination for the jury. In *Shor-Line,* a manufacturer abruptly gave a dealer whose franchise had been renewed over a period of twelve years ninety days to meet a series of major conditions, including the sale of 360 cars, the acquisition of a used car lot and new storage facilities, and the hiring of five additional employees. When the dealer attempted in good faith to meet these demands but was unsuccessful, the manufacturer terminated the franchise at the

end of the ninety day period. In holding that the evidence supported the jury's verdict for the plaintiff, the court noted that the manufacturer abruptly required the dealer to "totally change its character" in ninety days, despite the fact that the dealer had "suffered faithfully through the hard years" with the manufacturer and had recently been told that its facilities were adequate. 573 F.2d at 104.

In *H.C. Blackwell*, a manufacturer which had been attempting to negotiate a renewed franchise agreement with the dealer for a period of months advised the dealer by letter that the existing "informal arrangement" would terminate in ninety days, but that the manufacturer would offer the dealer a franchise agreement if the dealer met twelve specified demands within the ninety day period. The manufacturer's own sales manager testified at trial that it would have taken at least one year to meet the manufacturer's demands. The dealer made substantial progress toward meeting the requirements, but was unable to meet every demand. As a result, the manufacturer declined to renew the franchise. In upholding the jury's award of damages for the expenses incurred by the dealer in attempting to meet the demands, the court stated that while the manufacturer might have lawfully refused to renew the franchise prior to sending the letter containing the requirements, the jury could reasonably have found that the letter was coercive within the meaning of the Automobile Dealers' Day in Court Act. 620 F.2d at 107.

Unlike *Shor-Line* and *H.C. Blackwell*, in which the plaintiffs brought suit under a statutory provision that allows an automobile dealer to recover damages when a manufacturer terminates his franchise without acting in good faith, this case involves an application for an injunction based on a License Agreement that allows the defendant to terminate the franchise by giving reasonable notice and refraining from arbitrary or capricious conduct. More importantly, even if the defendant were bound by a good cause or good faith standard such as the statutory provision in

*Shor-Line* and *H.C. Blackwell*, the instant case would be readily distinguishable on its facts.

In the instant case, the relationship between Holiday Inns and plaintiffs was not one under which Holiday Inns voiced no objection to plaintiffs' hotel over a period of years and then suddenly decided to terminate unless plaintiffs could meet a series of unreasonable demands. Although plaintiffs point out that they received an "Acceptable" evaluation in October, 1983, one month before the courtesy evaluation was performed under the new system, the record indicates that the plaintiffs had on numerous occasions been informed that the hotel was not up to Holiday Inn standards under the former evaluation system. During the approximately three-year period in which the plaintiffs operated the hotel prior to the institution of the new evaluation system in November, 1983, the hotel received "Unacceptable" ratings on ten out of fifteen evaluations, and plaintiffs were given notice of default on three separate occasions. The last such notice was issued on August 25, 1983 for failure to maintain product quality standards.

In addition, the plaintiffs were given six months from the time of the first courtesy evaluation under the new system until notice of termination was given on May 18, and another month and one-half thereafter to correct the deficiencies prior to the final inspection on June 29. The record indicates that the plaintiffs did not begin to make any substantial efforts to correct the deficiencies until after they had received the second formal "Unacceptable" evaluation and notice of termination in May, 1984. While the plaintiffs did accomplish some improvements prior to the June 29 evaluation, the uncontradicted declaration of District Director Hulce, as corroborated by a chart listing the deficiencies as of June 29, states that many of the deficiencies noted on the February evaluation were still in existence on June 29. Many of these deficiencies were easily remediable, and remained merely as a result of the plaintiffs' failure to maintain the hotel in a clean and

sanitary condition. These items included dirty ash trays, damaged wall vinyl, disorganized and cluttered offices, stained and smudged doors, worn carpet, and broken lighting fixtures. The failure on the part of the plaintiffs to cure deficiencies such as these distinguishes this case from *Shor-Line* and *H.C. Blackwell,* where the plaintiff-dealer was found to have made as many of the improvements as was reasonably possible in the designated time period. The credibility of plaintiffs' continued promises to the defendant that they would undertake the necessary renovations at a substantial cost in order to meet Holiday Inn standards was clearly undermined given plaintiffs' failure to remedy simple deficiencies concerning matters of cleanliness and safety.

The absence of any culpable conduct on the part of the defendant in this case also renders *Shor-Line* and *H.C. Blackwell* distinguishable. The record before this Court contains no evidence of coercion, intimidation, or bad faith in Holiday Inns' conduct towards the plaintiffs. Indeed, plaintiffs have made no allegation that defendant's implementation of the new evaluation system was designed to single out the plaintiffs. Nor have plaintiffs charged that the "Unacceptable" evaluations and decision to terminate plaintiffs' franchise were motivated by reasons other than the defendant's desire to maintain certain minimum quality standards.

The evidence indicates that demands made upon plaintiffs in this case were not the type of "conditions" by which a franchisor might extort its own profit at the expense of the profits of the franchisee. Rather, the requirements were of the kind that would work to the advantage of both parties. *See Volkswagen Interamericana, S.A. v. Rohlsen,* 360 F.2d 437, 442 (1st Cir.), *cert. denied,* 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1966). As such, the Court finds that the defendant was merely insisting on compliance with lawful requirements set forth in the License Agreement with plaintiffs, and provided plaintiffs with a reasonable period of time in which to bring the hotel into compliance. *See Scun-*

*cio Motors, Inc. v. Subaru of New England,* 555 F.Supp. 1121, 1137 (D.R.I.1982), *aff'd,* 715 F.2d 10 (1st Cir.1983).

In sum, the evidence on the record at this juncture does not support the plaintiffs' contention that the defendant acted in an arbitrary and capricious manner in terminating the Agreement or in providing notice of the termination. To the contrary, the evidence indicates that the defendant's conduct in this regard was entirely reasonable. Moreover, the record indicates further that the defendant's decision to terminate plaintiffs' franchise was based on good cause—plaintiffs' consistent failure to maintain acceptable quality standards at the hotel despite repeated notifications by defendant of the deficiencies. Given plaintiffs' admitted breach of the License Agreement, the ample notice provided to plaintiffs by defendant of the breach and of termination, and the absence of any evidence of bad faith on the part of the defendant, the Court concludes that there is virtually no possibility that the defendant will ultimately be shown to have terminated plaintiffs' franchise in an arbitrary or capricious manner, or without good cause. In light of the above, the Court concludes that the plaintiffs have failed to raise serious questions of law on the merits, or to show that they have even a "fair chance" of prevailing in this case. *See Sports Form, Inc. v. United Press International, Inc.,* 686 F.2d 750, 753 (9th Cir.1982).

Accordingly, plaintiffs' application for a preliminary injunction is DENIED, and the Temporary Restraining Order granted by the Court on August 17, 1984 is dissolved. The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.