**In re LJP, INC., d/b/a Royal Crown Bottlers of South Florida, Inc., Debtor.**

**LJP, INC., d/b/a Royal Crown Bottlers of South Florida, Inc., Plaintiff,**

v.

**ROYAL CROWN COLA COMPANY, Defendant.**

Bankruptcy No. 82–01253–BKC–TCB.
Adv. No. 82–0597–BKC–TCB–A.

United States Bankruptcy Court,
S. D. Florida.

July 19, 1982.

tling agreement, under which the debtor has produced and sold Royal Crown Cola. The debtor has also moved for leave under 11 U.S.C. § 365 to assume certain leases of real and personal property from the defendant. (C.P. No. 4).

Because of the emergency nature of this problem, I treated the debtor's motion for temporary restraining order (C.P. No. 1) and supporting affidavit (C.P. No. 2) as an adversary complaint in compliance with the requirements of B.R. 701(5) and entered a temporary restraining order on July 2 following an emergency hearing held July 1. At that hearing, I accepted defendant's oral opposition as an answer to the "complaint". The temporary restraining order provided the debtor with the ingredients necessary to fill orders through the July 4th weekend which, in this business, is the equivalent of the Christmas season for other merchants. Defendant's cooperation and compliance has been without prejudice to its position that the bottler's agreement was effectively terminated before bankruptcy and is, therefore, beyond the reach of this court as an executory contract assumable under § 365. That issue was tried before me on July 13.

Resolving the conflicting evidence, the essential facts are relatively simple. The Bottler's Agreement of January 2, 1982, Section 7.1(4) provides:

"TERMINATION WITHOUT NOTICE. This Agreement and any and all rights of LICENSEE hereunder and any and all obligations of RCC hereunder shall immediately terminate, without the requirement of any notice to LICENSEE, upon the occurrence of any of the following: ... (4) The insolvency of LICENSEE; ..."

John L. Britton, Fort Lauderdale, Fla., for plaintiff.

David Rogero, Miami, Fla., for defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

This chapter 11 debtor seeks mandatory injunctive relief against Royal Crown Cola Company to compel reinstatement of a bot-

On June 1, 1982, defendant notified the debtor by telegram, that:

"... LJP INCORPORATED IS INSOLVENT ... ACCORDINGLY, WE HEREBY GIVE NOTICE OF TERMINATION OF THE BOTTLERS AGREEMENT, EFFECTIVE IMMEDIATELY, PURSUANT TO THE PROVISIONS OF SECTION 7.1(4) THEREOF."

This telegram made reference to and was preceded by notice to the defendant that the debtor's second check in payment under the Agreement in the amount of $119,356 had been dishonored. Defendant was notified on May 25. The debtor's third check in the amount of $56,779 was dishonored shortly thereafter and neither payment has yet been made good.

The debtor filed a voluntary chapter 11 petition on June 30.

■ There is no provision in the Bankruptcy Code which prohibits the termination before bankruptcy of a contract on account of insolvency. Section 365(e)(1) expressly prohibits the termination or modification of any contract "at any time *after* the commencement of the case" solely on account of insolvency. That subsection also prohibits termination or modification of any contract solely because of the commencement of a bankruptcy case. The express provisions of that subsection convince me that there is no legislative intent to invalidate the *pre-petition* termination of a contract on the sole ground of insolvency.

■ Similarly, there is no provision of the Code which permits assumption or the curing of defaults in a contract terminated before bankruptcy. Sections 1107(a) and 365(a) provide that the debtor-in-possession under chapter 11 "may assume or reject any executory contract or unexpired lease of the debtor", subject to the court's approval. The explicit provision for assumption of *executory* contracts convinces me that there is no legislative intention to permit assumption or reinstatement of contracts which have expired or have been terminated before bankruptcy. *Matter of Benrus Watch Co. Inc.*, 13 B.R. 331 (Bkrtcy.S.D.N.Y.1981).

■ As I see it, therefore, the sole issue that remains is whether defendant lawfully terminated this contract before bankruptcy. The evidence before me is conclusive that it did so.

The Bottler's Agreement expressly provides that it is governed by Georgia law. The term "insolvency" is not explicitly defined in the Agreement, however, Geor-gia law defines solvency by the balance sheet test. *Ferguson v. Atlanta Newspapers*, (1954) 91 Ga.App. 115, 85 S.E.2d 72, 74; *Chambers v. Citizens Southern National Bank*, (1978), 242 Ga. 498, 249 S.E.2d 214, 217. The parties by their conduct have given this same definition to the term.

After the debtor received the cancellation telegram, the parties met to afford the debtor an opportunity to demonstrate its solvency. A C.P.A. selected by the debtor prepared a balance sheet from the debtor's books and records. That balance sheet reflected liabilities of $2.5 million as against assets of $1.9 million and it is conceded that the debtor was insolvent on the date of cancellation and has been insolvent by the balance sheet test throughout most of its brief existence.

■ The debtor has argued that notwithstanding the insolvency of its own balance sheet, it is in fact solvent because the balance sheet assigns no value to the leases of the defendant's real and personal property held by the debtor. I find that these leases have been fully and accurately considered in the debtor's balance sheet and that none of these leases can be given any net asset value under generally accepted accounting practices.

It is the debtor's argument that there was an oral "gentlemen's agreement" between the parties incident to the Bottler's Agreement and the leases that the debtor could purchase the leased real and personal property at defendant's book value and that the current market value of the property exceeds its book value by a substantial sum which would more than offset the deficiency in its balance sheet. There are two significant flaws in this argument.

■ The Bottler's Agreement, § 10.2, stipulates that it is the complete agreement between the parties. The parol evidence rule would exclude proof of this "gentlemen's agreement". Although I received such testimony, over defendant's objection, I did so solely to preserve a complete evidentiary record in the event that I am mistaken as to the admissibility of this evidence.

Secondly, even if the "gentlemen's agreement" were admissible, I find from the proffered evidence that the agreement was subject to the condition that it could not be exercised by the debtor until the end of five years' satisfactory performance of the Bottler's Agreement. Although there is some conflict as to the existence of these conditions, I cannot believe that Royal Crown intended to give the debtor an immediate opportunity to purchase substantial real and personal property assets at a fraction of their current market value. With these significant limitations, the leases obviously had only speculative value on the date of termination.

There is no basis in this record to dispute the insolvency of the debtor on June 1.

The debtor has directed me to no statute or court decision which would invalidate the contractual provision used in this instance or which would subject that provision to some further act or proceeding not taken by the defendant in this instance. I have not overlooked In re Fontainebleau Hotel Corp., (5 Cir. 1975) 515 F.2d 913, 914 decided under Chapter X of the Bankruptcy Act of 1898. That decision is inapplicable here for the further reason that the lease which was in question in that case had not been effectively terminated before bankruptcy under Louisiana law, controlling in that instance. The court said:

"The law of Louisiana requires legal proceedings against a delinquent lessee and a judgment of the proper court before possession may be obtained. Thus the cancellation of the lease for nonpayment of rent is not effective until a court has ordered termination and granted possession. ... No judicial proceedings having been instituted in this case prior to the filing of the petition for corporate reorganization, the trustee succeeded to the possession of the debtor upon his appointment by the District Court."

It was this pivotal finding that gave the trial court equitable discretion to deny cancellation temporarily to permit attempted reorganization. It is not contended here that Georgia law requires legal proceedings for the termination of a contract. Fontainebleau does not support the debtor's contention that this court has equitable discretion to reinstate a contract, which has been validly terminated before bankruptcy, because that contract is essential to the debtor's reorganization.

The debtor has also argued that Royal Crown has waived its cancellation of the Bottler's Agreement or that it is equitably estopped from asserting cancellation. Neither position is supported by this record. Waiver is either the intentional relinquishment of a known right or conduct which warrants an inference of intentional relinquishment. Royal Crown's willingness to discuss with the debtor the validity of its charge of insolvency, its willingness to discuss a proposed settlement involving the debtor's reorganization, and its willingness to continue furnishing supplies to the debtor during these discussions do not support the inference that Royal Crown intended to relinquish its cancellation. On the contrary, it was expressly understood between the parties that Royal Crown's conduct after cancellation was without prejudice to cancellation.

Equitable estoppel requires proof that the debtor was induced by Royal Crown's conduct to change its position to the debtor's detriment. That did not happen in this case. Royal Crown's conduct did not induce any change of position. There has been no change in the debtor's position and it has suffered no detriment. On the contrary, it has enjoyed the benefit of continued supplies for six weeks at a time crucial to its business. This was an unmitigated benefit to the debtor.

As is required by B.R. 921(a), a separate judgment will be entered dismissing the debtor's complaint with prejudice, denying its motion to assume the allegedly executory contract and leases. The temporary restraining order of July 2, which expired by its terms on July 13, was by oral stipulation at the hearing of July 13, continued to the entry of this order. The temporary restraining order has, therefore, expired by its own terms. Costs will be taxed on motion.