In re GAINESVILLE P–H
PROPERTIES, INC.,
Debtor.

DAYS INNS OF AMERICA
FRANCHISING, INC.,
Plaintiff,

v.

GAINESVILLE P–H PROPERTIES,
INC., Defendant.

Bankruptcy No. 87–00604–BKC–6P1.
Adv. No. 87–125.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

June 18, 1987.

Michael G. Williamson, Orlando, Fla., J. Kirk Quillian, Atlanta, Ga., Joel Buckberg, Thomas B. Smith, Orlando, Fla., for Days Inns of America Franchising, Inc.

Lionel H. Silberman, Orlando, Fla., Jeffrey W. Kelley and Mark G. Trigg, Atlanta, Ga., for debtor.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

### BACKGROUND OF THE PROCEEDINGS

Gainesville P-H Properties ("GPHP"), the Debtor, filed its Petition under Chapter 11 of the Bankruptcy Code on March 16, 1987. On March 20, 1987 Days Inns of America Franchising, Inc. ("Days Inns") filed a motion for relief from the automatic stay to allow it to proceed with a prior pending action in the United States District Court, Northern District of Georgia, Atlanta Division arising out of Days Inns' terminations in October 1986 and in February 1987 of four franchise and license agreements with GPHP for certain motel and restaurant facilities being operated as Days Inn facilities.

On April 6, 1987 GPHP filed its motion for authority to assume executory franchise agreements as to twelve motels being operated as Days Inns facilities, including the four agreements which Days Inns had terminated and which were the subject of the pre-petition action pending in the United States District Court Northern District of Georgia.

Following an evidentiary hearing on Days Inns' motion for relief from the auto-

matic stay on April 13, 1987, the Court directed Days Inns to file in this Court an adversary proceeding seeking its requested declaratory and injunctive relief regarding the four terminated agreements. The Court set May 18, 1987 to hear Days Inns' motion for preliminary injunction together with the Debtor's twelve motions for authority to assume executory franchise agreements. The Court further ordered that Days Inns could accept payments from the Debtor regarding amounts due under all twelve franchise and license agreements without prejudice to Days Inns' position that certain of the franchises and licenses were validly terminated prior to the filing of the bankruptcy petition.

Days Inns filed its adversary proceeding seeking a declaratory judgment that the four agreements had been validly terminated and a preliminary and permanent injunction causing GPHP to immediately cease and desist from operating the four terminated units as Days Inns' facilities and from holding out to the public the facilities or services at those four locations as being authorized Days Inns facilities. Days Inns also requested compensatory damages, liquidated damages, as provided in the agreements, recovery of attorney's fees and costs and other relief.

GPHP timely filed an answer admitting that the franchise and license agreements with Days Inns granted valuable tangible and intangible rights and that Days Inns' marks, trade name and trade dress had substantial value and the secondary meaning in the marketplace, but denying that that four agreements had been validly terminated by Days Inns. GPHP also filed a counterclaim alleging that Days Inns had breached its franchise agreements with GPHP, had tortiously interfered with GPHP's business, had committed trade libel and tortious interference with contract, and had breached its fiduciary duty and obligation to deal in good faith with franchisees. GPHP requested compensatory damages, punitive damages, attorneys' fees and costs and a mandatory injunction directing Days Inns to reinstate the four terminated units on the Days Inn reserva-

tions system and in the Days Inn Directory for authorized Days Inn facilities.

The Court heard evidence extending over a period of three days commencing on May 18, 1987 on Days Inns' request for declaratory and injunctive relief regarding the four terminated agreements and on GPHP's answer and counterclaim in regard to the same, together with evidence on the Debtor's motions for authority to assume twelve executory franchise agreements with Days Inns, including the four which are contested in the adversary proceeding.

Based on the record, the Court grants Days Inns request for declaratory and injunctive relief and holds that the four franchise and license agreements were validly terminated on the effective dates of the notices for termination, two of which were in October 1986 and two of which were in February 1987. Those four agreements were therefore not a part of the Debtor's estate when it filed its Petition on March 16, 1987. GPHP is preliminarily and permanently enjoined from holding itself out as a Days Inns' facility at those four locations, as more fully set forth below. Based on the evidence presented at trial, the Court does not award monetary damages to Days Inns. The Court denies each and every claim asserted in GPHP's counterclaim.

The Court grants the Debtor's motions to assume the other eight executory franchise agreements pursuant to Section 365, as more fully set forth in a separate order.

## FINDINGS OF FACT

I. *Factual Backgrounds Leading Up to Terminations.*

Days Inns is a franchisor engaged in the business of franchising Days Inn motel, lodge and restaurant facilities throughout the country. Days Inn motels have been in operation for over fifteen years. There currently are over 500 Days Inn motel, lodge and restaurant facilities.

Days Inns has the right to use and to protect the "Days Inn" registered service mark, and other registered and proprietary service marks used in connection with its

Days Inns facilities. Days Inns has the exclusive right to license in the United States registered service marks owned by its parent corporation, Days Inns of America, Inc.

Days Inns, at great expense over a period of years, has developed a distinctive trade dress which it has marketed and promoted to the public in order to develop a public awareness and association with Days Inns facilities and related products and services. There is a general public awareness and association of the combination of the substantially standardized, recognizable and unique elements of a Days Inn facility among its customers and its potential customers in the geographical area where Days Inns facilities are located. The various service marks and the trade dress of Days Inns constitute an asset and good will of substantial value and are a symbol of Days Inns, its motels and services.

GPHP entered into eleven franchise agreements dated January 15, 1980 which licensed and authorized the operation of eleven motel and restaurant facilities as Days Inn facilities, subject to the terms and conditions of each such franchise agreement. Seven facilities were in Tennessee and five were in Florida. As of March 1, 1986, GPHP obtained a license to operate an additional location in Pensacola, Florida as a Days Inns facility. (Hereinafter the eleven franchise agreements and one license agreement are sometimes referred to collectively as "franchise agreements" for convenience.)

Among the terms and conditions that GPHP agreed to perform under the franchise agreements was to maintain and operate the facilities and their related services in conformity with Days Inns' standards, methods and procedures and to make such repairs and replacement to the facilities as Days Inns may require to insure an acceptable degree of quality, service and image of Days Inns and to protect its name and good will throughout the term of the franchise agreements.

As a franchisee, GPHP was required to comply with Days Inns Quality Assurance ("Q.A.") program, which provides, among other things, certain standards and specifications regarding the conditions of buildings, fixtures and furnishings, housekeeping and operation procedures and other matters designed to assure a uniform and standardized degree of quality and image available to customers at Days Inns' facilities. Over the years there have been modifications and changes to the Q.A. program as Days Inns deemed appropriate to protect and enhance its image and reputation among its customers in the competitive and evolving motel business.

GPHP and its president and principal, Amir Khimani ("Khimani"), were familiar with Days Inns Q.A. program and had repeatedly represented a willingness and desire to comply in all respects with Days Inns Q.A. standards and the practices and procedures of the Q.A. program.

The Q.A. program included periodic inspections of the facilities by employees of Days Inns trained in the Q.A. system. It was Days Inns' practice for the Q.A. inspector to discuss his findings and report with the general manager on the premises before submitting the written report to the Days Inns Q.A. department. Under the franchise agreements entered into in 1980, the minimum passing Q.A. score was 370 points. The maximum score for facilities under the Days Inn Q.A. system was 500 points. A score between 425 and 500 points is an "A", between 400 and 425 is a "B", between 370 and 400 is a "C" and below 370 is an "F." Over the years the average Q.A. score system-wide has increased to around 424. The requirements for bringing new properties into the Days Inn system have increased to a minimum passing score of 370 points upon entry into the system, 400 points within the first six months and 425 points within the first twelve months from entering the system. There are a number of Days Inn facilities which have a minimum passing score of 400, rather than 370, by virtue of workout agreements between the franchisee and Days Inns which involve renovations to upgrade the conditions of facilities.

Since becoming a Days Inns franchisee in 1980, GPHP had had numerous Q.A. failures on its various properties and a series of broken promises by GPHP and Khimani to Days Inns. In September 1985 Days Inns entered into a master workout agreement with Khimani and GPHP to assure improvement in condition of the properties and in the performance of the service and operations at the eleven Days Inn facilities. GPHP also was applying for a Days Inn franchise on the property in Pensacola, Florida to be added as the twelfth Days Inn facility operated by GPHP, and that application was a part of the master workout agreement. The basic tenets of the master workout agreement provided that the eleven existing properties would obtain a quality assurance score of 400 by March 15, 1986 and a score of 425 by March 15, 1987; and that GPHP would escrow certain funds to be applied for capital improvement through the establishment of accounts known as sinking funds for each unit. The master workout agreement provided that the Pensacola property would be eligible for a Days Inn franchise if it attained a Q.A. score of 400 by October 31, 1985 and maintained a minimum score of 400 through March 15, 1986 at which time it would attain a 425 score and certain improvements identified on a "punch list" provided by Days Inns to GPHP would be completed.

Days Inns invested considerable time and energy in an effort to assist GPHP and Khimani as an operator and franchisee. A separate punch list of needed improvements was done for each property. GPHP, however, did not perform its obligations or meet the stipulated deadlines under the master workout agreement as to the eleven properties or as to the Pensacola property. By the end of 1985 there were again Q.A. failures on various properties operated by GPHP and two extensions of time had been granted for the Pensacola property to obtain a 400 Q.A. score.

GPHP's failure to obtain the Q.A. standards within the time required, even as extended, on the Pensacola property led to a termination of the master workout agreement as to that property. GPHP later applied for a license agreement, which was granted on March 1, 1986 after the attainment of a satisfactory score on quality assurance inspection for the Pensacola property.

Notwithstanding continued promises by Khimani and GPHP that conditions would improve, Q.A. failures continued into 1986. One unit located at Summer Ave., Memphis, TN, had two consecutive Q.A. failures, which by the terms of the agreement was grounds for termination by Days Inns. In February 1986, Days Inns gave notice of termination, which led Khimani to again request additional time and concessions to allow him to improve the property to a satisfactory Q.A. score. In April 1986, Days Inns and GPHP agreed to specific terms regarding the possible reinstatement of the franchise agreement for the Summer Ave., Memphis property, as well as an acknowledgment and reaffirmation by Khimani and GPHP that no further extensions of time would be granted beyond the terms provided in the franchise agreements.

There followed, however, Q.A. failures on other GPHP units and monetary defaults as to GPHP units. In April, 1986, shortly after the agreement as to the Summer Ave., Memphis facility, there were Q.A. failures on two facilities, one located on Bell Road in Nashville, TN and the other located on Shelby Drive in Memphis, TN. GPHP also had several monetary defaults due to its failure to timely pay monthly royalties and to timely submit monthly reports on revenue to Days Inns. In the fall of 1986 GPHP had submitted bad checks to Days Inns, which resulted in a requirement that GPHP pay Days Inns only by wire transfer or certified funds. GPHP was notified of the defaults and of Days Inns' insistence upon strict compliance with the terms of the franchise agreements and license agreement with regard to all events of default, periods to cure defaults and the exercise of termination rights by Days Inns in the event defaults were not timely cured.

In October 1986 Days Inns terminated two franchise agreements. On October 27, 1986 Days Inns sent GPHP a written Ac-

knowledgement of Termination effective immediately as to the franchise agreement for the property located at Plus Park Boulevard in Nashville, TN. That unit had a failing Q.A. score in early September 1986 and again upon reinspection in late October following notice and expiration of the 30–day cure period.

On October 30, 1986 Days Inns sent GPHP an Acknowledgement of Termination effective immediately as to the franchise agreement for the facility located at Bell Road in Antioch, TN, which is near Nashville. That unit was terminated because it had received two failing Q.A. scores within the calendar year, one in April and one in October, and because the franchisee had repeatedly failed to comply with one or more of the requirements of the agreement, whether or not corrected after notice, as provided in the franchise agreement. Days Inns also invoked the cross-default provision in the franchise agreement which entitled termination of one franchise agreement upon GPHP's failure to cure any defaults under any of its other agreements with Days Inns.

Days Inns removed each of the two units from the Days Inn reservation system following these terminations. GPHP intentionally refused to comply with the post-termination obligations to de-identify the properties from all indicia of a Days Inn facility and knowingly continued to operate the facilities and hold them out to the public as though they were authorized Days Inn facilities. Days Inns filed an action in United States District Court for the Northern District of Georgia seeking enforcement of its post-termination remedies under the franchise agreements and the Lanham Act, including declaratory and injunctive relief which would prohibit GPHP from holding those two facilities out as Days Inn facilities.

On the eve of the hearing scheduled on November 26, 1986 on Days Inns' motion for preliminary injunction, the parties reached an agreement. GPHP agreed to de-identify the Days Inn indicia at the two facilities and not to hold them out to the public as Days Inn facilities. Days Inns

agreed to terms and conditions which, if performed by GPHP, would allow the reinstatement of the two facilities in the Days Inn system. The agreement provides, among other things, that each GPHP facility would attain a Q.A. score of 400 by March 15, 1987 and 425 by June 1, 1987; that a sinking fund would be established by January 31, 1987 for each GPHP facility; that GPHP would timely perform improvements specified on a punch list for each of the two terminated facilities; and that each such unit would attain a Q.A. score of 400 within a specified time frame. GPHP did not perform the obligations it had agreed to under this agreement.

In February 1987 Days Inns terminated two other agreements which are the subject of this adversary proceeding. On February 2, 1987 Days Inns sent an Acknowledgement of Termination, giving GPHP notice of immediate termination of the license agreement for the Pensacola, Florida property. GPHP had failed to cure a monetary default within the time period provided under the license agreement for monthly royalties and other charges which were incurred for the month of December. GPHP was in default by its failure to establish a sinking fund by January 31, 1987, as it had agreed to do. The Pensacola unit also received a notice to cure a Q.A. failure based on its recent inspection. At the time, GPHP intentionally did not disclose to Days Inns other material defaults, which existed under the license agreement, including the lapse of insurance on the property, monetary defaults under GPHP's mortgage and other conditions which caused a full-time receiver to take over the operations at the Pensacola property on February 9, 1987.

On February 6, 1987 Days Inns sent an Acknowledgement of Termination giving GPHP notice of immediate termination of the franchise agreement for the facility located at Shelby Drive in Memphis, TN. Days Inns had learned from independent sources, not from GPHP, that the electrical power had been cut off at the facility for approximately 20 to 24 hours due to GPHP's failure to pay amounts owing the utility company. During the power outage

guests were relocated to other facilities. GPHP had ceased to do business at the premises during the period of the power outage, which was a cause within GPHP's control and grounds for termination. GPHP's conduct under these circumstances also reflected unfavorably upon the operation and reputation of the franchised facility and of Days Inns, which warrants termination under the franchise agreements.

Days Inns removed each of these two facilities from the Days Inn reservation system on the effective termination dates, February 2, 1987 and February 6, 1987. GPHP intentionally failed to comply with the post-termination obligations to de-identify and to cease operating the Pensacola, Florida facility and the Memphis facility at Shelby Drive as Days Inn facilities following receipt of written termination of those agreements.

In February 1987 Days Inns also learned that a mortgagee of GPHP was scheduled to commence foreclosure proceedings in March 1987 on the seven of GPHP properties located in Tennessee. In January and again in March 1987 Days Inns learned that the landlord under the ground leases for five facilities, the two properties in Nashville, which had been terminated as Days Inns facilities, and three other Days Inns facilities in Florida, had given notice to GPHP of termination of the ground lease and demanded eviction from the premises effective in March 1987.

On March 16, 1987 GPHP filed its Chapter 11 Petition in this Court. Immediately thereafter GPHP re-identified the two Nashville properties as "Days Inn" facilities and held them out to the public as being authorized Days Inn facilities and services.

II. *The Quality Assurance Systems.*

Under the franchise agreements GPHP contracted to comply with Days Inns' Q.A. program. The standards, practices and procedures of Days Inns' Q.A. program are fair and reasonable. Days Inns did not apply its Q.A. standards, practices or procedures in an arbitrary, capricious or improp-

er manner as to any property being operated by GPHP.

Days Inns' Q.A. program, like any quality assurance program, contains an element of subjectivity; but that is not grounds to invalidate the system or to deny enforcement of the termination of the agreement with the franchisee or licensee who fails to comply with the quality assurance program of Days Inns.

GPHP contends that variances in Q.A. scores from one inspection to another at the same facility indicates that the Q.A. system is subjective and arbitrary. Based on the evidence, however, it is clear that point variances of some magnitude from one inspection to the next are highly plausible, because housekeeping and maintenance at a particular facility can vary markedly between inspections. Scoring variances can occur when different rooms are inspected during different inspections. Even certain problems requiring capital expenditures may be evident on one inspection, but covered up, such as by painting or patching, and not visible at a different inspection. Capital items, however, wear out and will decline in point value over time. Cheap and quick fix measures may cover up deficiencies for the purpose of an inspection, but the deficiencies will recur. Based on the evidence, the variances in Q.A. scores were not due to inherent deficiencies in Days Inns' Q.A. program, but rather were due to circumstances at the facility and matters within the control of GPHP.

Each of the quality assurance inspections at issue in this case was conducted in a manner consistent with the standards, practices and procedures of Days Inns' Q.A. program. GPHP's president, Khimani, the director of operations, Gayle Bandy, and the regional director, Vince Dittmore, each testified that they thought certain failing Q.A. scores should have been higher. Khimani, Bandy, and Dittmore all testified that the GPHP facilities were "passing" properties under Days Inns' Q.A. scoring system and that the GPHP facilities were in better condition than certain Days Inn facilities operated by other franchisees,

which facilities had received "passing" Q.A. scores on recent inspections. The testimony of these witnesses was basically not relevant, as well as being unreliable, biased and subjective.

The quality assurance system protects the name and reputation of Days Inns. Through franchise compliance, Days Inns seeks to prevent an unsatisfactory guest experience. Days Inns, as franchisor, ultimately has responsibilty to establish Q.A. standards and administer them. A franchisee agrees to abide by the franchisor's quality assurance system, even if it is unfair or less than perfect. A franchisee's complaints about Q.A. scoring cannot render unenforceable the quality assurance program or the terms of the franchise agreement. In the event of a disagreement, the franchisee's opinion cannot displace the franchisor's conclusions regarding matters of quality assurance. The evidence shows that Days Inns' Q.A. system is reasonable and better than the industry norm. The administration of the Q.A. system by Days Inns is enforceable as to GPHP.

The operator of a business such as a hotel or motel always has the option of operating independently, subject only to his own standards. If the operator selects a franchise affiliation, he obtains the benefits of a recognized name, good will and method of doing business. He also obtains the burdens of compliance with the franchise system's standards, and the substitution of the franchisor's opinion as to the quality of goods and services offered by the business for his own. This exchange is the essence of the franchise relationship.

III. *Days Inns Did Not Act In Bad Faith.*

There was no evidence to support the claim of GPHP that Days Inns was "out to get GPHP" or that Days Inns had a bad faith motive in connection with any of the terminations at issue in this case. On the contrary, the evidence shows that Days Inns had been cooperative, reasonable and fair, if not lenient, in its dealings with GPHP. GPHP had a history of poor performance as a franchisee. Days Inns had entered into several agreements to allow GPHP to cure defaults and to workout its problems as a franchisee. GPHP had failed to perform its obligations or to meet the conditions it had agreed to under those agreements. There is no evidence that Q.A. inspections and scores which GPHP questions were done with a bad faith motive.

GPHP argued that Days Inns had a bad faith motive in terminating three franchise agreements dated January 15, 1980 (two in Nashville, TN and one in Memphis, TN), because they had a royalty obligation which GPHP alleged to be lower than the royalty obligation of facilities under Days Inns' current license agreement. GPHP contends Days Inns wanted to issue new license agreements in those markets and to discontinue the older franchise agreements. The evidence does not support GPHP's claim. Indeed, GPHP's contention is inherently inconsistent, since it would have been in Days Inns' economic interest to receive royalties from these existing facilities of GPHP plus new licenses, rather than to eliminate the former.

CONCLUSIONS OF LAW.

Days Inns complied with the terms of the franchise agreements and license agreement, including the enforcement of its Q.A. program, the enforcement of the requirements for monetary payments by the franchisee, and the enforcement of the franchisee's duty to operate a Days Inn facility without interruption by causes within the franchisee's control and without conduct which reflects adversely on the facility or on Days Inns.

The termination of each of the four agreements resulted from a material breach by the franchisee, GPHP. The Plus Park Blvd., Nashville, TN facility had received a failing Q.A. score on the next inspection after the cure period following an earlier Q.A. failure. Paragraph 13(b) in the Franchise Agreement allows termination:

If Franchisee fails to perform or breaches any reasonable covenant, obligation,

term, condition, warranty or certification herein and fails to cure such breach or failure to perform within thirty (30) days after Franchisor gives written Notice to Cure ...

The Bell Road, Nashville, TN facility was terminated after receiving two Q.A. failing scores in the same calendar year. Paragraph 13(k) in the Franchise Agreement allows termination:

If Franchise has received from Franchisor two (2) or more Notices to Cure pursuant to this Paragraph 13 for the same or similar defaults in the same calendar year, or if the Franchisee repeatedly fails to comply with one or more requirements of this Agreement, whether or not corrected after notice.

Because of the prior termination of the franchise agreement for the Plus Park Blvd., Nashville, TN facility, termination of this agreement was also proper under the cross-default provision, Paragraph 13(e) in the Franchise Agreement, which allows termination:

If Franchisee defaults in ˙any other agreement with franchisor, its parent, subsidiaries or affiliates, and does not cure such default in accordance with the terms of such other agreement ...

The license agreement for the Pensacola, FL facility was proper under Paragraph 19(b) for failure to cure monetary defaults within the terms of the license agreement. The evidence showed there were additional grounds for termination of the license agreement, including GPHP's defaults under its November 26, 1986 agreement with Days Inns, the cross default provision in Paragraph 19(b)(v), and material defaults in the operation of the facility which GPHP knew about, but had intentionally failed to disclose to Days Inns.

The franchise agreement for the facility at Shelby Drive, Memphis, TN was terminated after GPHP failed to pay its utility bills, thus allowing the electrical power to be cut off by the utility company. The facility ceased normal operations and sent guests to other facilities. Paragraph 13(g) in the franchise agreement allows termination:

If Franchisee ceases to operate all or any part of the franchised Unit as required hereunder (except due to fire, flood, storm, or similar event beyond franchisee's control), or otherwise forfeits or abandons the right to do or transact business at the Premises.

The circumstances also are within the grounds for termination in Paragraph 13(h) as being "conduct which reflects unfavorably upon the operation and reputation of the Franchised Unit or the Days Inns Plan."

■ Based on the evidence in this case, therefore, there was sufficient cause for terminating each of the four agreements. Any material breach of a franchise agreement which infringes on the franchisor's rights is grounds for terminating the relationship.

In *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562 (11th Cir.1986), the Eleventh Circuit upheld a judgment for the franchisor for trademark infringement and breach of the franchise agreement where the contract was terminated when the franchisee failed to meet Ramada Inns' quality standards and failed to de-identify the property following termination. In *Huang v. Holiday Inns, Inc.*, 594 F.Supp. 352 (C.D.Cal.1984), the district court denied a hotel franchisee's motion for a preliminary injunction to enjoin termination of a franchise. The court found that the franchisee's consistent failure to maintain acceptable quality standards despite repeated notifications by the franchisor constituted good cause for termination. The franchisee was unable to show the termination was arbitrary and capricious. In *Kilday v. Econo-Travel Motor Hotel Corp.*, 516 F.Supp. 162 (E.D.Tenn.1981), franchisee was required to comply with franchisors standards of quality, maintenance and cleanliness, regardless of whether the same standards were required of other franchisees. *See also Woodard v. General Motors Corp.*, 298 F.2d 121 (5th Cir.), *cert. denied,* 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288 (1962) (where automobile dealership agreement provided that dealer maintain a place of business satisfactory to the manufactur-

er as to appearance, location, size and layout and failure to do so was grounds for termination, the manufacturer's dissatisfaction with site of dealership and the dealer's failure to correct situation justified termination); *Gordon v. Crown Central Petroleum Corp.*, 423 F.Supp. 58 (N.D.Ga. 1976) (termination justified for failure to keep service station open 24 hours, 7 days a week as required by agreement); *Marquis v. Chrysler Corp.*, 577 F.2d 624 (9th Cir.1978) (termination for inadequate marketing of product and seven years of low sales upheld); *Martschinske v. Olympic Styles, Inc.*, 628 F.Supp. 231 (D.S.D.1984) (under South Dakota law, failure of franchisee to provide franchisor with quarterly balance sheets and to pay franchisor its percentage of gross sales, pursuant to agreement, justified termination); *Russ Thompson Motors, Inc. v. Chrysler Corp.*, 425 F.Supp. 1218 (D.N.H.1977) (failure to meet sales quotas for new autos and failure to submit monthly financials necessary to permit manufacturer to determine if dealer maintained net working capital required by agreement provided "due cause" for termination); *RAC Motors Inc. v. World-Wide Volkswagen Corp.*, 314 F.Supp. 681 (D.N.J.1970) (summary judgment granted to manufacturer on issue of wrongful failure to renew agreement where dealer had submitted false sales reports stating it had made inspections that were never actually performed); *General Motors Corp. v. MAC Co.*, 247 F.Supp. 723 (D.Colo.1965) (summary judgment granted to manufacturer on wrongful termination issue where termination for unauthorized transfer of ownership shares).

■ GPHP's continued use of the trade name, service marks and indicia of operation of a Days Inns hotel following termination of the franchise and license agreements violates not only the provisions of those agreements, but also the Lanham Act, including 15 U.S.C. §§ 1114 and 1125(a), causing irreparable injury to Days Inns and entitling Days Inns to injunctive relief.

■ The licensor of a registered trademark or trade name has not only a right, but a duty to the public to monitor the quality presented to the public under its licensed mark. *McAlpine v. AAMCO Automatic Transmissions, Inc.*, 461 F.Supp. 1232 (E.D.Mo.1978). Deliberate unauthorized use of a registered trademark or trade name is sufficient to establish the requisite injury to the trademark owner so as to establish a right of recovery. The injury is to the trademark owner's interest in having exclusive control over the symbols of its own reputation. *Mishawaka Rubber Co. & Wollen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1942); *Carling Brewing Co. v. Philip Morris, Inc.*, 277 F.Supp. 326, 335–36 (N.D.Ga.1967) (citing *Yale Electric Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir.1928) (L. Hand, J.)). Falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source of sponsorship and unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant constitutes infringement. Lanham Act § 32(1)(a); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir.1983); *Professional Golfers Ass'n of America v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir.1975).

■ Continued trademark use by one whose trademark license had been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement. *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir.1983); *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562 (11th Cir.1986); *Holiday Inns, Inc. v. C.H. Alberding*, 683 F.2d 931 (5th Cir. 1982); *Holiday Inns, Inc. v. Airport Holiday Corp.*, 493 F.Supp. 1025 (N.D.Tex. 1980). Under the Lanham Act, remedies for trademark infringement include, but are not limited to injunctive relief. 15 U.S.C. § 1117; *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562 (11th Cir.1986).

■ The franchise and license agreements choose Georgia law to control interpretation and enforcement of their terms. GPHP argues that the forfeiture doctrine under Georgia landlord-tenant law pre-

cludes enforcement by Days Inns of the termination provisions of its franchise and license agreements with GPHP. GPHP urges that it has invested substantial sums and developed substantial ongoing business at the four terminated properties which gives it property rights which would be forfeited by termination of the agreements. GPHP also argues that termination of any one franchise agreement triggers a default under the mortgage as to eleven of the properties. The properties are owned, not by GPHP, but by Southern Motel Associates, Ltd., which may have some owners common to GPHP.

GPHP's argument fails for several reasons. First, the concern in the lease agreement cases with potential forfeiture is that there is a loss of the tenant's *possessory* rights under a lease. *Peachtree on Peachtree Investors, Ltd. v. Reed Drug Co.*, 251 Ga. 692, 308 S.E.2d 825 (1983). Days Inns has no rights in the property itself. Termination of the franchise agreements does not give Days Inns the right to take possession of the properties from GPHP. Days Inns is not to be precluded from enforcing its contractual rights because of possible consequences of an agreement that GPHP made with a third party, such as landlords or mortgagees. *See, e.g. Huang v. Holiday Inns, Inc.*, 594 F.Supp. 352 (C.D.Cal.1984) (termination of franchise agreement by franchisor was upheld notwithstanding evidence that such termination was grounds for default under the mortgage).

Furthermore, the forfeiture provisions of which GPHP complains are express in the agreements. Even in lease situations, the Georgia courts recognize that where forfeiture provisions are express in an agreement, they will be enforced. *See C & S Land Co. v. Rudolf Investment Corp.*, 163 Ga.App. 832, 296 S.E.2d 149 (1982); *Pritchett v. King*, 56 Ga.App. 788, 194 S.E. 44 (1937). In the present case, Days Inns has the right to enforce the express termination provisions of its agreements with GPHP.

GPHP's argument regarding the doctrine of strict construction is only relevant where

there is an ambiguity in the termination provisions. Where the lease termination provisions are unambiguous, they are upheld and enforced. In the instant case, the termination provisions in the franchise agreements are unambiguous, and Days Inns has terminated the agreements in accordance with those provisions.

Under Georgia law, a franchise agreement must be applied according to its terms. As the Georgia Court of Appeals stated in *Intercontinental Investors, Inc. v. Georgia Donuts, Inc.*, 162 Ga.App. 685, 292 S.E.2d 107 (1982), an action where the franchisee was challenging the fairness of the termination provisions of a franchise agreement:

> Where the essentials of a contract are present and no rule of law appears to have been transgressed, the courts are powerless to interfere because in the respect indicated the agreement may be a harsh one.

*Id.* at 686, 292 S.E.2d at 108 (quoting *Aspironal Laboratories v. Rosenblat*, 34 Ga. App. 255, 129 S.E. 140 (1925)). At the time GPHP entered into the franchise and license agreements with Days Inns and received the benefits of being a franchisee in the Days Inns system, it agreed to perform certain conditions. It also agreed that should it fail to perform those acts, Days Inns had the right to terminate the agreements. Days Inns validly terminated these four agreements under Georgia law.

■ Termination of the four agreements prior to GPHP's filing of their Chapter 11 petition prevent those agreements from becoming property of the bankruptcy estate.

When the termination process has been completed and been effective prior to the date of the filing of the bankruptcy petition, as is the case here, there is nothing left to become part of the estate under 11 U.S.C. §§ 365 and 541. The filing in bankruptcy does not revive the franchise relationship.

In *In re Volpe Enterprises, Inc.*, 23 B.R. 818 (Bankr.S.D.Fla.1982), the United States Bankruptcy Court for the Southern District of Florida found that where a franchise agreement was validly terminated prior to

the filing of the bankruptcy petition, there is nothing left for the court to resuscitate or protect. In that case, the debtor, an automobile service franchise, had defaulted under the contract by failing to remit royalty payments to the franchisor, Midas International Corporation, in a timely manner. The agreement provided that where the franchisee had received three notices of default within twelve consecutive months and then failed to perform any condition under the agreement, Midas could immediately terminate. The court found that the termination prior to the filing of bankruptcy prevented any assumption or resuscitation of the terminated agreement. The inability of the debtor to reorganize and the value of the franchise to a reorganization were irrelevant. *Id.* at 820.

In *In re LJP, Inc.*, 22 B.R. 556 (Bankr.S.D.Fla.1982), a Chapter 11 debtor sought to compel reinstatement of a bottling agreement. The court found that where the pre-bankruptcy termination was valid, there was no provision in the Bankruptcy Code which would permit assumption or curing of defaults in the contract. *Id.* at 558. The court rejected the debtor's argument that the court had equitable discretion to reinstate the contract, validly terminated before bankruptcy, because the contract was essential to the debtor's reorganization. *Accord, In re Herbert*, 806 F.2d 889 (9th Cir.1986); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *In re Benrus Watch Co., Inc.*, 13 B.R. 331 (Bankr.S.D.N.Y. 1981); *In re Beck*, 5 B.R. 169 (Bankr.D.Hawaii 1980); *In re Tirenational Corp.*, 47 B.R. 647 (Bankr.N.D.Ohio 1985); *In re Anne Cara Oil Co., Inc.*, 32 B.R. 643 (Bankr.D.Mass.1983).

Where an agreement requires notice of termination, if the notice is effective under state law and no further act is required to effectuate the termination, the termination becomes effective in accordance with its terms. *In re Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171 (5th Cir.1972); *In re Lauderdale Motor Car Corp.*, 35 B.R. 544 (Bankr.S.D.Fla. 1983). Where pre-petition notice of termi-

nation was the last affirmative act required to effect termination, nothing remains to be done except to wait for the passage of time. *In re Eklund & Swedlund Dev. Corp.*, 17 B.R. 451, 456 (Bankr.D.Minn. 1981); *In re Beck*, 5 B.R. 169, 170 (Bankr. D.Hawaii 1980); *In re Lauderdale Motorcar Corp.*, 35 B.R. 544 (Bankr.S.D.Fla. 1983).

As the Seventh Circuit noted:

> Whatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less. Section 541 is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.

*Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984) (*quoting* H.R.Rep. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U.S.Code Cong. & Ad.News 5787).

In summary, the Court declares that the agreements for the four facilities were validly and effectively terminated as follows: Plus Park Blvd., Nashville, TN facility on October 27, 1986; Bell Road, Nashville, TN on October 30, 1986; Pensacola, FL on February 2, 1987; Shelby Dr., Memphis, TN on February 6, 1987. Those agreements were not a part of the Debtor's estate at the time of filing its petition and therefore not subject to the automatic stay in the bankruptcy case. Days Inns has suffered and continues to suffer irreparable injury by GPHP's operation of these four facilities using Days Inn marks, trade name, trade dress and other indicia after the termination of the agreements and without authority from Days Inns. GPHP is permanently enjoined from operating any of these four facilities as Days Inn facilities or using Days Inns marks, trade name, trade dress or indicia, as more specifically set forth in the injunction in the Final Judgment entered in this case. The Court finds GPHP's counterclaim to be without merit and enters judgment against GPHP on each claim therein.

ORDER GRANTING IN PART AND DE-
NYING IN PART DEBTOR'S
TWELVE MOTIONS FOR AUTHORI-
TY TO ASSUME EXECUTORY
FRANCHISE AGREEMENTS, AS
AMENDED

THIS CAUSE came on to be heard on Monday, May 18th, Tuesday May 19th, and Wednesday, May 27th, 1987 on the Debtor's twelve Motions for Authority to Assume Executory Franchise Agreements between the Debtor and Days Inns of America Franchising, Inc. ("Days Inns"), dated January 15, 1980 and amended on or about September 18, 1985 and by an Agreement dated November 26, 1986 (hereinafter "Franchise Agreements, as Amended"), and a certain License Agreement between the Debtor and Days Inns dated March 1, 1986 and amended by Agreement dated November 26, 1986 (hereinafter "License Agreement, as Amended"). The Court having determined that notice was given to all proper parties, having reviewed the file, taken testimony from evidence of both parties, having examined the documentary evidence submitted, having heard argument of counsel and being otherwise fully advised in the premises, it is,

ORDERED AND ADJUDGED as follows:

1. The Court grants the Debtor authority to assume eight executory Franchise Agreements, as Amended, with Days Inns pertaining to the facilities identified below:

    # 6017   Gainesville, Florida
    # 6023   Manchester, Tennessee
    # 6048   Murfreesboro, Tennessee
    # 6051   Jacksonville, Florida
    # 6052   Kissimmee, Florida
    # 6061   Cookeville, Tennessee
    # 6072   Orlando, Florida (Lee Road)
    # 6089   Memphis, Tennessee (Summer Avenue).

2. The Debtor is directed to make payment within five days of the date of this Order to Days Inns of $85,818.27 to cure monetary defaults existing as of May 27, 1987 as a condition to the Debtor assuming the eight Franchise Agreements, as Amended, pursuant hereto. Upon payment of said sums to Days Inns by the Debtor, the eight Franchise Agreements, as Amended, are deemed to be assumed.

3. The Court denies the Debtor's Motions for authority to assume four executory Franchise and License Agreements, as Amended, which had been validly and effectively terminated prior to the petition being filed in this case, as fully set forth in a separate order and judgment.

4. The Court enters concurrent herewith, Findings of Fact and Conclusions of Law in support of this Order.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW REGARDING DEBT-
OR'S TWELVE MOTIONS FOR AU-
THORITY TO ASSUME EXECUTORY
FRANCHISE AGREEMENTS

THIS CAUSE came on to be heard on Monday, May 18th, Tuesday, May 19th, and Wednesday, May 27, 1987 on Debtor's Motions for Authority to Assume Executory Franchise Agreements ("Motions") and on Days Inns of American Franchising, Inc.'s ("Days Inns") Complaint for Injunctive and Declaratory Relief in Adversary Proceeding No. 87–604. The Court having heard testimony of the witnesses, having reviewed the record and the documentary evidence, having heard argument of counsel and being otherwise fully advised in the premises, hereby enters the following findings of facts and conclusions of law with regard to the Debtor's Motions, having dealt with the Adversary Proceeding for injunctive and declaratory relief by a separate order and judgment.

**FINDINGS OF FACT**

1. Gainesville P–H Properties, Inc. (hereinafter the "Debtor") is a Florida corporation presently operating its business under the provisions of Chapter 11 of the United States Bankruptcy Code. Debtor filed its Petition on March 16, 1987.

2. The Debtor's business includes the operation of motel and restaurant facilities at twelve locations in the States of Tennessee and Florida.

3. The Court finds that the Debtor and Days Inns entered into an Agreement dated November 26, 1986 amending the Franchise Agreements the Debtor seeks to assume. The Debtor sought to enforce the terms of said agreement in a counter-claim filed against Days Inns in a pre-petition action in the United States District Court for the Northern District of Georgia, Atlanta Division. The terms and conditions in said agreement are a part of the executory agreements which the Debtor seeks to assume.

4. The Debtor and Days Inns entered into eleven Franchise Agreements dated January 15, 1980 which Agreements were Amended on or about September 18, 1985 and by the Agreement dated November 26, 1986 (hereinafter "Franchise Agreements, as Amended"). The Debtor and Days Inns entered into a certain License Agreement dated March 1, 1986, which was amended by an agreement dated November 26, 1986 (hereinafter "License Agreement, as Amended").

5. In a separate order and judgment in the Adversary Proceeding No. 87–125, the Court has declared that three of the Franchise Agreements, as Amended, and the License Agreement, as Amended, were validly and effectively terminated prior to the Petition filed by the Debtor on March 16, 1987; and therefore, those four Agreements were not the property of the Debtor's estate at the time of the filing of the Petition.

6. The Court finds that eight Franchise Agreements, as Amended, are binding executory contracts which were in force as of the date of the filing. They apply to Days Inn motel and restaurant facilities identified below:

    # 6017 Gainesville, Florida
    # 6023 Manchester, Tennessee
    # 6048 Murfreesboro, Tennessee
    # 6051 Jacksonville, Florida
    # 6052 Kissimmee, Florida
    # 6061 Cookeville, Tennessee
    # 6072 Orlando, Florida (Lee Road)
    # 6089 Memphis, Tennessee (Summer Avenue).

7. The Court finds that the Debtor must pay Days Inns the amount of $85,818.27 in order to cure monetary defaults as required by Bankruptcy Code § 365(b)(1).

8. The Court finds that it is in the best interest of the Debtor to assume the eight Franchise Agreements, as Amended, and to comply with the obligations in accordance with the terms and conditions of said Agreements.

## CONCLUSIONS OF LAW

9. The Court finds that the four Franchise and License Agreements, as Amended, which were validly and effectively terminated prior to the Petition being filed on March 16, 1987, are not the property of the Debtor's estate and cannot be assumed by the Debtor. The Debtor's Motions to assume those four Agreements are denied.

10. The Court concludes that the other eight Franchise Agreements, as Amended, as identified above are executory contracts. The Court concludes further that there was sufficient evidence to grant Debtor's Motions to assume those eight executory contracts pursuant to 11 U.S.C. § 365, upon the Debtor's payment to Days Inns of the amount of $85,818.27 which sum would cure monetary defaults under the Agreements with Days Inns as of May 27, 1987. The testimony of Amir Khimani, President of the Debtor and Gale Bandy, Director of Operations for the Debtor, persuades the Court that the Debtor has provided adequate assurance that in the future it will fully perform its obligations in compliance with the terms and conditions in the eight Franchise Agreements, As Amended.

11. Concurrent herewith the Court will enter its order granting eight of the Debtor's Motions conditioned upon payment to Days Inns of the sum of $85,818.27 and denying four of the Debtor's Motions.